854 P.2d 807 (1993)
The PEOPLE of the State of Colorado, Plaintiff-Appellant,
v.
Robyn BOYLAN and Mark Boylan, Defendants-Appellees.
No. 93SA47.
Supreme Court of Colorado, En Banc.
July 12, 1993.
*808 Stephen K. ErkenBrack, Dist. Atty., Martha L. Kent, Chief Deputy Dist. Atty., Grand Junction, for plaintiff-appellant.
Edward J. Nugent, P.C., Edward J. Nugent, Grand Junction, for defendant-appellee Mark Boylan.
Foster, Larson, Laiche & Griff, Stephen L. Laiche, Grand Junction, for defendant-appellee Robyn Boylan.
Justice MULLARKEY delivered the Opinion of the Court.
The questions before the court in this interlocutory appeal are whether a dog sniff of a private express courier package is a search and, if so, whether such a search was valid under Article II, section 7 of the Colorado Constitution. The trial court suppressed the fruits of the search warrant obtained after the dog "alerted" on a package addressed to the defendants. It held that the dog sniff was a search and, under our decisions in People v. Wieser, 796 P.2d 982 (Colo.1990), and People v. Unruh, 713 P.2d 370 (Colo.1986), that the police did not have a reasonable suspicion based on specific and articulable facts to believe that the package contained contraband. While we agree that the dog sniff was a search, we disagree with the trial court that the police did not have reasonable suspicion for such a search. Therefore, we reverse the trial court's suppression order and remand the case for further proceedings consistent with this opinion.

I.
In January 1992, Detective Timothy Grimsby of the Grand Junction Police Department, assigned to the Mesa County Narcotics Enforcement Team, spoke with Dan Ellegood who worked for United Artists, a cable television company. Ellegood had come to the Mesa County Sheriff's office on his own initiative with information concerning drug dealing in Mesa County. Specifically, Ellegood told Grimsby that he had spoken with someone who had identified himself as "Peter Boylan," a person who had signed a contract with United Artists permitting the installation of cable television in Evelyn's Restaurant in Mesa, Colorado. Peter told Ellegood that he wanted his name removed from the contract because the owners of the restaurant, Robyn and Mark Boylan, were involved in drugs. Peter also told Ellegood that the Boylans received their drugs through Federal Express and that Mark Boylan was his uncle. Ellegood also showed Grimsby a copy of a cable television contract that had been signed by "Peter Boylan."
In February 1992, a confidential informant told Investigator Bill Booth of the Mesa County Sheriff's Office that Mark Boylan made frequent trips to New York, and that, while in New York, Boylan obtained cocaine which he brought back to Grand Junction via the airlines. After Detective Grimsby learned of the information from the confidential informant, he contacted Sandra Erickson of Federal Express and requested her to be on the alert for packages addressed to Mark or Robyn Boylan from New York because they might contain cocaine.
On February 22, 1992, Erickson noted that a package coming through the Grand Junction Federal Express office was addressed to Robyn Boylan at a Grand Junction address. She contacted the Federal Express Security Office in Denver and was told to contact Grimsby and allow him to inspect the package. Grimsby asked her to hold the package until he could get a narcotics-sniffing canine to the office to inspect the package. Grimsby went to the Federal Express office accompanied by Pepper, a dog trained to sniff for cocaine and marijuana. When allowed to sniff at an array of five packages, including the one addressed to Robyn Boylan, the dog alerted on the Boylan package several times. Grimsby interpreted the dog's alerts as indicating that the package contained a controlled substance.
Equipped with this information, Grimsby swore out an affidavit and obtained a search warrant to open the package. The package was opened and the substance within the package was field tested. The substance tested positive for cocaine. A controlled delivery was then attempted (at *809 approximately the same time the package would have been delivered in the normal course of events), but no one was present at the residence. A note was left saying that delivery would be attempted again on the next business day. After the package was delivered, the police executed a search warrant for the residence.[1]
The Boylans were each charged by information with possession of cocaine with intent to distribute,[2] as special offenders,[3] and with tampering with physical evidence.[4] The Boylans moved to suppress the evidence seized as a result of both the search warrant for the package and the warrant for the residence. The trial court granted the motions to suppress, and the district attorney appealed the suppression order pursuant to section 16-12-102(2), 8A C.R.S. (1992 Supp.), and C.A.R. 4.1. We reverse the trial court's suppression order and remand the case for further proceedings consistent with this opinion.

II.
Article II, section 7 of the Colorado Constitution[5] protects the people of this state against unreasonable searches and seizures by government agents. People v. Unruh, 713 P.2d at 374. The defendants assert that the police detention of the package and the subjection of that package to a sniff by the narcotics detection dog were an unreasonable seizure and search of the package, violative of the state constitution. This is not the first time that this court has considered whether a sniff by a narcotics detection dog is a search or the standards by which to judge such a dog sniff.
In Unruh, the police recovered the defendant's safe from burglars and, while the safe was in police custody, subjected the safe to a sniff by a dog trained to detect narcotics. We held that the dog sniff was a search but, because of the unique character of the search, a reasonable suspicion based on specific and articulable facts, rather than probable cause, was all that was required to support the search. In determining that the dog sniff in that case was a search, we considered whether it was an intrusion into something that the individual reasonably expected to be private. In Unruh, we concluded that there was a reasonable expectation of privacy in the safe, because the defendant could have had no expectation that the privacy of that safe, which was locked in the basement of his home when it was stolen, would be subject to any governmental investigation at all. Id. at 378.
In Wieser, the court divided. In that case, the police observed the defendant associating with a suspected methamphetamine dealer who had flown into town. After the suspected drug dealer left town, the defendant was seen in a public storage facility at his storage locker for five or six days in a row. Each time, he carried a backpack and rode one of three motorcycles, but all of the motorcycles had the same California license plate. A dog sniff of the door of the locker indicated that the locker contained narcotics. A search warrant was obtained and executed, resulting in the seizure of narcotics. Three justices concluded that a dog sniff was not a search, relying on the United States Supreme Court's decision in United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). A majority of the court, however, concluded that a dog sniff was a search because of the intrusion, albeit minimal, of the dog sniff into an individual's reasonable expectation of privacy. *810 Id. at 987 (Mullarkey, J., concurring in the judgment) and 988 (Quinn, J., dissenting). Of these four, three found that the dog sniff of the defendant's storage locker was supported by the police's reasonable suspicion, Id. at 987 (Mullarkey, J., concurring in the judgment), and only one justice concluded that the search was improper. Id. at 988 (Quinn, J., dissenting).

III.
Here, we must ask the same questions that we did in Unruh and Wieser. First, did the defendants have a reasonable expectation of privacy with regard to the contents of the Federal Express package. If no, the inquiry is complete because the dog sniff is not a search under either the state or federal constitution. If yes, however, we then must ask whether the search was reasonable, that is, whether the police had a reasonable suspicion, based on specific and articulable facts, that the package contained illegal drugs. We address these questions in order below.

A.
A package sent by a private courier service bears many similarities to a letter sent via the United States Postal Service. Mail being sent by first class postage traditionally was defined by statute as "matter closed against postal inspection." 3 Walter R. LaFave, Search and Seizure § 10.3(b) at 677 (2d ed. 1987) (quoting former 39 U.S.C. § 4251(a)). Currently, first class mail is still generally closed to postal inspection and may not be opened except pursuant to a search warrant or to determine an address at which a letter can be delivered. Id. (quoting 39 U.S.C. § 3623(d)). While first class mail is closed to inspection, other types are not. The postal service provides a listing which identifies the mailings that are open to inspection and those that are not, giving the consumer an opportunity to choose. Id.
That an addressee of a package sent via a private courier service has some expectation of privacy in the package's contents is axiomatic.[6]Cf. People v. Hillman, 834 P.2d 1271 (Colo.1992) (no reasonable expectation of privacy in contents of garbage bags left for collection). The package is sent in a sealed, opaque envelope. As such, the contents of the package are hidden from view. Any revelation of the contents of such a package would require some prying into what was hidden from view and, when done by a state actor, is a search.
The use of a drug-sniffing dog to determine the contents of a Federal Express package, therefore, is a search under the interpretation of Article II, section 7 of the Colorado Constitution adopted by this court. Even though the use of such a dog sniff may be minimally intrusive and may disclose only the presence or absence of contraband,[7] it still invades the addressee's constitutional privacy interest in the contents of the package.

B.
In People v. Unruh, 713 P.2d 370, we balanced the police need to search a closed container by using a dog to sniff the *811 container against the invasion which such a search entails. We concluded that a dog-sniff search need be justified not by probable cause sufficient to obtain a search warrant, but instead by reasonable suspicion, similar to that required to stop and frisk a person suspected of involvement in imminent criminal activity. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); People v. Ellington, 854 P.2d 223 (Colo.1993). The second question presented in this case is whether the police possessed reasonable suspicion to subject the package to a dog-sniff search. We conclude that, in light of the totality of the evidence, the police did in fact possess reasonable suspicion to subject the package at issue to a dog-sniff search.
To fulfill this burden, the prosecution must show that the police possessed specific and articulable facts which, when taken together with the reasonable inferences from these facts, give rise to a reasonable suspicion that the package contained contraband. Unruh, 713 P.2d at 379. Here, the reasonable suspicion comes from two sources. First, there is the report of Dan Ellegood to Detective Grimsby. As a civilian informant, what Ellegood had to say, i.e., that someone named Peter Boylan told him that the defendants were involved in the cocaine trade and that they received their cocaine via Federal Express, is deemed as credible without any corroboration. People v. Glaubman, 175 Colo. 41, 51-52, 485 P.2d 711, 716-717 (1971).
What must be considered, however, is whether the hearsay statement of "Peter Boylan" should be deemed credible. First of all, "Peter Boylan" appears to be, like Ellegood, a citizen informer. In addition, his stated reason for wanting his name to be removed from the United Artists Cable Television contract was not motivated by payment or revenge but stemmed from his stated desire not to be associated with illegal activity. The defendants challenged the existence of "Peter Boylan," the alleged nephew of defendant Mark Boylan, and the trial court found there was no person by that exact name. It also found, however, that the defendants had failed to prove that no witness named "Peter" existed or that a person named "Peter" was not involved in the defendants' business. The evidence indicates that there was a Peter Legoff who appears to have been involved in the defendants' business. Furthermore, Grimsby's affidavit testimony that "Peter Boylan" signed the cable television contract (a copy of which is not in the record) corroborates both Ellegood's and Peter's statements. There is no evidence that Grimsby deliberately falsified "Peter Boylan's" name, see People v. Farnsworth, 95 Ill.App.3d 105, 50 Ill.Dec. 585, 419 N.E.2d 693 (1981), or that "Peter Boylan" deliberately gave a false name to Ellegood. See Rohrig v. State, 148 Ga.App. 869, 253 S.E.2d 253 (1979). Instead, the trial court apparently concluded that the "Peter Boylan" of the affidavit was some other Peter who actually existed, and that either Ellegood or Grimsby was simply in error as to his last name.
The other source of reasonable suspicion is the generally corroborating information from the confidential informant. The confidential informant said that Mark Boylan would be flying to New York to purchase cocaine, and that he would be transporting the cocaine back to Colorado via the airlines. Even though Grimsby's affidavit contained no information on the overall reliability of the confidential informant (and Grimsby testified at the suppression hearing that he did not know anything about the confidential informant except for the information passed to him about the defendants), and the confidential informant's information varied from Ellegood's information regarding the precise mode by which the cocaine would be brought into Colorado, the confidential informant's information generally corroborated Ellegood's information that the defendants were involved in selling cocaine. Such internal consistency between the information given by Ellegood and that given by the confidential informant lends reliability and credibility to the information. People v. Montoya, 44 Colo.App. 234, 616 P.2d 156, 161 (1980).
The question, then, is whether this information rises to the level of reasonable suspicion. Although the information obtained *812 from the citizen informant does not require corroboration, the record does not indicate whether the police attempted to corroborate the information given by the confidential informant. The record does not indicate whether Grimsby inquired into flights taken by Boylan to New York or reservations Boylan may have made to fly to New York. As such, the police investigation does not appear to be a model of diligence. However, reasonable suspicion to justify a dog-sniff search is not proof "beyond a reasonable doubt," or "by a preponderance of the evidence," or "clear and convincing evidence," or even probable cause. It is whether the police have specific and articulable facts, greater than a mere hunch, to support the dog-sniff search. Here, the police had second-level hearsay information that the defendants were involved in drug trafficking. The information was that the Boylans brought their drugs into the state via Federal Express. The first level of the hearsay was from a citizen informant who does not appear to have any motive to fabricate or dissemble, and therefore is deemed to be reliable. The second level of the hearsay was from a "Peter Boylan," someone who, in hindsight does not appear to exist by that name. A Peter Legoff, however, does exist, and does appear to have been involved in the Boylan's restaurant business, and very well may have been the person whose name appeared on the cable television contract.
Second, the police had information from a confidential informant. This information was generally corroborative of the information supplied by Ellegood. Third, and finally, after requesting Federal Express to be on the lookout for packages for the Boylans sent from New York, a package addressed to Robyn Boylan came through the Grand Junction office less than two months after Ellegood gave Grimsby the original information and within a few days after the information was provided by the confidential informant. The determination of whether there was reasonable suspicion, like a determination of probable cause, must be done by looking at the totality of the evidence. Each separate item of information standing alone would not have amounted to reasonable suspicion. However, the three in combination clearly satisfy the reasonable suspicion requirement. There were specific and articulable facts reasonably leading the police to suspect that the Federal Express package addressed to Robyn Boylan contained cocaine. The dog-sniff search was therefore legal. The fact that Pepper alerted to and indicated on the package in a lineup, in addition to the other information possessed by the police, gave the police probable cause to obtain a search warrant for the package, and the contraband in the package supported the search warrant for the residence.

IV.
To conclude, we hold that, in this case, the dog-sniff of the defendants' package sent by a private overnight courier was a search but that, under our decisions in People v. Wieser, 796 P.2d 982 (Colo.1990), and People v. Unruh, 713 P.2d 370 (Colo.1986), it was supported by reasonable suspicion and was, therefore, legal. Accordingly, we reverse the suppression order of the district court and remand the case for further proceedings consistent with this opinion.
ERICKSON, J., specially concurs.
VOLLACK, J., specially concurs in the result only, and ROVIRA, C.J., and ERICKSON, J., join in the special concurrence in the result.
Justice ERICKSON specially concurring:
I join Justice Vollack in his concurrence. In United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1986), the United States Supreme Court held that a dog sniff of luggage at an airport for narcotics did not constitute a "search" within the meaning of the Fourth Amendment of the United States Constitution. Under the facts of People v. Wieser, 796 P.2d 982, 985 (1990), we concluded that a dog sniff for narcotics does not violate Article II, section 7 of the Colorado Constitution. I continue to believe that neither the Fourth Amendment of the United States Constitution or Article II, section 7 of the Colorado Constitution afford protection to a "dog sniff."
*813 The dispositive question in this case, however, is whether the defendant had a legitimate expectation of privacy when employing a private carrier to transport contraband. See id. at 987 (Erickson, J., specially concurring). The controlling issue is whether or not the police had the right to be where they were when a dog was used to identify narcotics. Id. Based on the facts of this case, the police had reason to question the contents of the package and did not violate the defendant's legitimate expectation of privacy by employing a trained dog to sniff a Federal Express package for narcotics. Accordingly, the trial court erred in ordering suppression of the narcotics in this case.
Justice VOLLACK specially concurring in the result only:
The majority reverses a trial court order suppressing evidence of narcotics. Maj. op. at 811-12. In so ruling, however, the majority concludes that "[t]he use of a drug-sniffing dog to determine the contents of a Federal Express package ... is a search under the interpretation of Article II, section 7 of the Colorado Constitution adopted by this court." Maj. op. at 810. I disagree. I find that this court's opinion in People v. Wieser, 796 P.2d 982 (Colo.1990) (plurality opinion), which relies on the United States Supreme Court opinion in United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), dictates that a dog sniff is not a search. I specially concur in the result only.

I.
As the majority notes, "Article II, Section 7, of the Colorado Constitution protects individuals from unreasonable searches and seizures." People v. Hillman, 834 P.2d 1271, 1273 (Colo.1992); Colo. Const. art. II, § 7; see maj. op. at 809 n. 5. Thus, in Hillman, we stated that, "`"[w]hen a defendant challenges governmental investigative activity involving an intrusion into his privacy, Katz [v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),] requires a two-step inquiry: (1) was the intrusion a search; (2) if so, was it a reasonable search."'" Hillman, 834 P.2d at 1273 (quoting People v. Wieser, 796 P.2d 982, 984 (Colo.1990) (quoting People v. Unruh, 713 P.2d 370, 377 (Colo.), cert. denied, 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986))) (emphasis added). We noted in Hillman that "the protections of article II, section 7, do not extend to investigative activity that does not amount to a search." Hillman, 834 P.2d at 1273. We additionally noted that this court has "not concluded that all police investigative activity impermissibly infringes on a legitimate expectation of privacy and thus does not rise to the level of a search for the purposes of article II, section 7." Id. at 1277.
A search generally "involves `some exploratory investigation, or an invasion and quest, a looking for or seeking out,' and `implies a prying into hidden places for that which is concealed.'" People v. Gomez, 632 P.2d 586, 591 (Colo.1981) (quoting 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.1 at 222 (1978)) (emphasis added); see People v. Carlson, 677 P.2d 310, 316 (Colo.1984) ("A search consists of a looking for or seeking out that which is otherwise concealed from view.") Thus, for example, we found in Carlson that an officer's observation of a defendant as he walked around a vehicle did not constitute a search. Carlson, 677 P.2d at 316.
In Wieser, we were confronted with the issue of whether a drug-sniffing dog's activities constituted a search. Wieser, 796 P.2d at 984. The answer, we noted, depended on "whether the dog's actions intruded upon an activity or an area in which the defendant held a legitimate expectation of privacy." Id. We quoted extensively from the United States Supreme Court opinion in United States v. Place:
"We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. A `canine sniff' by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain *814 hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited."
Wieser, 796 P.2d at 985 (quoting Place, 462 U.S. at 707, 103 S.Ct. at 2644). We thus held in Wieser that a dog sniff conducted outside of an individual's storage locker did not constitute a search under either the United States or Colorado Constitutions. Id.
In the present case, a law enforcement officer conducted a canine sniff with a trained dog at a Federal Express office open to the public. Under Place and Wieser, the dog sniff in this case is not a search. Wieser, 796 P.2d at 987 (Erickson, J., specially concurring); see State v. Snitkin, 67 Haw. 168, 681 P.2d 980, 982 (1984) (holding that a dog sniff of a package at a Federal Express Office was not a search); State v. Kesler, 396 N.W.2d 729, 735 (N.D.1986) (holding that a dog sniff of a package at a post office was not a search); see generally United States v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir.1990) (holding that a dog sniff is not a search). Accordingly, article II, section 7, does not extend protection to the defendants in this case, and the trial court order suppressing evidence of narcotics should be reversed.
I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this special concurrence in the result.
NOTES
[1] The record does not indicate what, other than the Federal Express package and its contents, was seized from the residence pursuant to the second search warrant.
[2] § 18-18-105, 8B C.R.S. (1986).
[3] § 18-18-107, 8B C.R.S. (1986).
[4] § 18-8-610, 8A C.R.S. (1986 & 1992 Supp.).
[5] Article II, section 7 of the Colorado Constitution provides:

The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place or seize any person or things shall issue without describing the place to be searched, or the person or thing to be seized, as near as may be, nor without probable cause, supported by oath or affirmation reduced to writing.
[6] The record does not indicate whether Federal Express reserved the right to inspect and open packages. Notwithstanding this possible private contractual right which is outside the bounds of the federal and state constitutions, the government is not permitted to make unreasonable searches and seizures.
[7] The reliability or accuracy of dog sniffs is subject to dispute. Compare United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) ("A `canine sniff' by well-trained narcotics detection dog, however, does not require opening the luggage.... [T]he sniff discloses only the presence or absence of narcotics, a contraband item.") with Doe v. Renfrow, 475 F.Supp. 1012 (N.D.Ind.1979), (drug-sniffing dogs alerted to thirty-three junior high school and high school students without drugs in their possession, including one who had played with her dog, which was in heat, that morning) rev'd on other grounds, 631 F.2d 91 (7th Cir.1980); United States v. $639,558.00 in United States Currency, 955 F.2d 712, 714 (D.C.Cir.1992) (dog alerted on money only; expert testified that most money in circulation contaminated with sufficient amounts of cocaine to alert trained dog); Andrew E. Taslitz, Does the Cold Nose Know? The Unscientific Myth of the Dog Scent Lineup, 42 Hastings L.J. 17, 50-52 (1990).