956 P.2d 1254 (1998)
The PEOPLE of the State of Colorado, Plaintiff-Appellant,
v.
Redgan REYES, Defendant-Appellee.
No. 97SA429.
Supreme Court of Colorado, En Banc.
March 16, 1998.
Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, for Plaintiff-Appellant.
Charles W. Elliott, Denver, for Defendant-Appellee.
Justice BENDER delivered the Opinion of the Court.
In this interlocutory appeal, the People seek reversal of an order by the Adams County District Court granting the defendant's motion to suppress evidence. At the suppression hearing, the district court ruled that the initial stop of the vehicle driven by the defendant, Redgan Reyes (Reyes), was constitutionally permissible because law enforcement officers possessed a reasonable suspicion that Reyes was involved in criminal activity. However, the court determined that a search of the interior of Reyes's vehicle by a police narcotics detection dog violated Reyes's right to be free of unreasonable *1255 searches and seizures because Reyes did not consent to the search and because the search did not occur incident to an arrest. We reverse the district court's suppression order because the district court applied an incorrect standard of law. We hold that the officers' reasonable suspicion that the truck contained controlled substances, coupled with the narcotics canine's two alerts to the vehicle, provided the officers with probable cause to conduct a warrantless search of Reyes's truck in accordance with the automobile exception to the warrant requirement.

I.
On October 30, 1996, the North Metro Task Force arranged a controlled purchase of cocaine using a confidential informant. This informant described to police officers previous drug purchases by the informant occurring in the parking lot of the Thornton Town Center from an individual known to him as "Red" who drove a 1986 red Nissan pickup truck. The exchange was to occur at 9:00 p.m. at a pre-arranged location. The informant, who drove his own car, arrived late and "Red" was not at the site. After making a telephone call, the informant advised the officers that he was to meet "Red" in the parking lot of the Thornton Town Center. The officers equipped the informant with a listening device and conducted visual surveillance as he met Reyes and another male in the parking lot. The informant and Reyes had a brief discussion and then returned to their respective vehicles. Reyes drove a red Nissan pickup truck matching the description previously provided by the informant. The informant notified the officers through the listening device that he was going to "Red's" house and that the officers should move their surveillance to that location.
As Reyes and his companion drove away, law enforcement officers stopped the truck and asked the occupants to exit the vehicle. A narcotics detective circled the vehicle twice with a narcotics detection dog. Both times, the dog indicated the presence of the scent of a controlled substance by alerting to the back side of the passenger-side door. The officers opened the driver-side door and allowed the dog to search the truck's interior. The dog dug through grocery bags located behind the seats and retrieved a hard package wrapped in masking tape. A field test indicated that the package contained cocaine. Reyes was arrested and charged with possession of cocaine with the intent to distribute.
At the suppression hearing, the district court found that the initial stop of Reyes's vehicle was supported by a reasonable suspicion of criminal activity and was therefore valid. The district court then addressed the officers' intrusion into the interior of the vehicle by allowing the narcotics detection dog to enter the truck. The district court stated:
I am surprised I didn't hear that when the dog made a hit on two separate occasions in the location identified by the dog handler... that I didn't hear any testimony that at that juncture someone was placed under arrest for suspicion of possession of illegal substances....
....
But under the circumstances that I see here, and based upon the fact that there was no arrest at the time that the dog hit was made but that ... the arrest was made subsequent to the time that the introduction of the dog was precipitated ... that unless it was incident to the arrest and would fall into one of the exceptions there, that I cannot find probable cause for Detective Sigwart to continue his search in the fashion that he did after there was a positive hit, unless there was consent by the defendant.
....
So I find that the introduction of the dog into the cab of the vehicle was in violation of the Fourth Amendment.
(Emphasis added.) The court then granted the motion to suppress. It is from this order that the People appeal.

II.

A.
Reyes argues that this court must affirm the suppression order because the officers lacked a reasonable and articulable *1256 suspicion that he may have been involved in criminal activity when they stopped his car. We decline to address this question in an interlocutory appeal under C.A.R. 4.1.
C.A.R. 4.1(a), which governs interlocutory appeals in criminal cases, only authorizes such appeals in limited circumstances. See People v. Weston, 869 P.2d 1293, 1297 (Colo.1994). C.A.R. 4.1 allows the prosecution to appeal a district court's order suppressing evidence in a criminal case. See C.A.R. 4.1(a) ("The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion... made in advance of trial by the defendant for return of property and to suppress evidence."). However, a defendant is not entitled to interlocutory relief under C.A.R. 4.1. See, e.g., People v. Barton, 673 P.2d 1005, 1006 n. 1 (Colo.1984). "[I]f the district court resolves a suppression issue against the defendant, we have no jurisdiction to address it in an interlocutory appeal." Weston, 869 P.2d at 1297.
Here, the district court held that the officers possessed a reasonable and articulable basis to stop Reyes's truck, and that the canine sniff of the exterior of the truck was constitutional because it was supported by a reasonable articulable suspicion of criminal activity. Because the district court resolved these issues in favor of the prosecution, we cannot consider them in an interlocutory appeal and we assume for purposes of this appeal that these rulings are correct.[1]

B.
Our search and seizure jurisprudence is well-developed. Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable. See People v. Rodriguez, 945 P.2d 1351, 1359 (Colo.1997). There are, however, limited exceptions to the warrant requirement. See People v. Moore, 900 P.2d 66, 70 (Colo.1995). One of these exceptions is the "automobile exception" that permits police to conduct a warrantless search of an automobile if the police have probable cause to believe that the automobile contains evidence of a crime. See People v. Hill, 929 P.2d 735, 739 (Colo.1996); Moore, 900 P.2d at 70; People v. McMillon, 892 P.2d 879, 882 (Colo.1995). The automobile exception also allows police to search containers within an automobile that might contain the object of their search. See Hill, 929 P.2d at 739. Probable cause is a prerequisite to the automobile exception, and law enforcement officials may not search a vehicle under this rule without first establishing probable cause.
In certain circumstances, a "canine sniff" by a trained narcotics detection dog may give rise to probable cause. A "canine sniff" may disclose to law enforcement authorities whether narcotics are present in the area sniffed by the dog. See United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); People v. Wieser, 796 P.2d 982, 985 (Colo.1990). We have held that when the police have reasonable suspicion to believe that a closed package or container contains narcotics, this suspicion coupled with a reliable[2] positive canine alert may *1257 establish probable cause providing the basis for the issuance of a search warrant. See People v. May, 886 P.2d 280, 283 (Colo.1994); People v. Boylan, 854 P.2d 807, 812 (Colo. 1993). The Tenth Circuit and other jurisdictions have held that a canine alert may establish probable cause providing the basis for a warrantless search. See, e.g., United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir.1993) (dog alert gave drug agents probable cause to search trunk of defendant's car parked in motel parking lot); United States v. Diaz, 25 F.3d 392, 396 (6th Cir.1994) (officers possessed probable cause to search defendant's car because a valid dog sniff indicated the presence of a controlled substance).
Applying these principles to the facts of this case, the reasonable suspicion of the police that led to the stop of Reyes's truck, when combined with the narcotics detection dog's two alerts to the vehicle, elevated the information known to the police to the status of probable cause to believe that the truck contained narcotics. The canine alert confirmed the officers' reasonable suspicion that the car contained narcotics, establishing probable cause to support the warrantless search under the automobile exception. Once the officers possessed probable cause to believe that the automobile contained evidence of a crime, the automobile exception authorized the officers' search of the passenger compartment of the truck. Thus, the cocaine found in the truck was the product of a lawful search.
The district court erred by failing to apply the automobile exception to the warrant requirement in ruling that the officers could not search the interior of the pickup unless the search was consensual or incident to arrest. Hence, we reverse the order of suppression and remand to the district court for further proceedings.
NOTES
[1] Under our jurisprudence, a dog sniff can be a "search" if an individual possesses a reasonable expectation of privacy in the item that is subjected to the sniff. Generally, dog sniffs of objects are minimally intrusive and must be supported by a reasonable articulable suspicion that the item sniffed contains evidence of a crime. However, we have not yet addressed the narrow question of whether a canine sniff of an automobile's exterior constitutes a "search" that must be supported by a reasonable suspicion that the vehicle contains evidence of a crime. See People v. May, 886 P.2d 280, 282 (Colo.1994) (holding that a dog sniff of an express mail package is a search); People v. Wieser, 796 P.2d 982, 985 (Colo. 1990) (four members of the court agreeing that a dog sniff of a storage locker in a public area was a search); People v. Unruh, 713 P.2d 370, 379 (Colo. 1986) (holding that a dog sniff of a safe taken by a burglar from the defendant's home was a search).
[2] We presume that this canine sniff was reliable for purposes of this appeal. However, we acknowledge that the reliability of a canine alert may be challenged on numerous bases, and that the reliability of a canine sniff is a matter left to the discretion of the district court. See, e.g., United States v. Ludwig, 10 F.3d 1523, 1528 (10th Cir. 1993) (stating that "a dog alert might not give probable cause if the particular dog had a poor accuracy record"); United States v. Diaz, 25 F.3d 392, 393-94 (6th Cir. 1994) (analogizing a dog's alert to expert testimony under Fed.R.Evid. 702 that may be attacked on credibility grounds under the district court's discretion and stating that the district court may hear evidence concerning a canine's training and reliability as well as expert testimony attacking the canine's performance). As Professor LaFave aptly notes:

The classic example is Doe v. Renfrow, where such a dog "alerted" to a 13-year-old girl during a school-wide "sniff" of all students. This dog continued to "alert" even after she emptied her pockets, so she was then subjected to a nude search by two women; no drugs were found, but it was later discovered that she had been playing that morning with her dog, who was in heat. This was not an isolated instance of error. The dogs used in this undertaking alerted to some fifty students, only 17 of whom were found to be in possession of drugs.
1 Wayne R. LaFave, Search and Seizure § 2.2(f), at 455 (3d ed.1996) (discussing Doe v. Renfrow, 475 F.Supp. 1012 (N.D.Ind.1979)).