2012 CO 22

**The PEOPLE of the State of Colorado, Plaintiff–Appellant**

v.

**Heather L. ESPARZA, Defendant–Appellee.**

**No. 11SA234.**

Supreme Court of Colorado, En Banc.

March 26, 2012.

Elizabeth A. Oldham, District Attorney, Fourteenth Judicial District, Jon F. Pfeifer, Chief Deputy, Craig, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Emily Wickham, Deputy Public Defender, Steamboat Springs, Colorado, Attorneys for Defendant–Appellee.

Justice COATS delivered the Opinion of the Court.

¶1 The People brought an interlocutory appeal pursuant to section 16–12–102(2), C.R.S. (2011), and C.A.R. 4.1, assigning error to the district court's suppression of contraband seized from the defendant's vehicle on two separate occasions. In each case, after the defendant was arrested for driving under suspension, a police narcotics detection canine was brought to the scene and led around her truck, which had been parked and left at the location of her arrest. Also in each case, after the dog alerted to the presence of narcotics, a search of the truck's cab revealed drug paraphernalia and suspected methamphetamine. The district court found that under these circumstances, the state constitution barred the police from bringing a trained narcotics detection dog within detection range of the defendant's vehicle without first having reasonable suspicion to believe it

contained contraband, which the court found to be lacking in both cases.

¶ 2 We now hold that an interest in possessing contraband cannot be deemed legitimate under the state constitution any more than under the federal constitution, and that official conduct failing to compromise any legitimate interest in privacy cannot be deemed a search under the state constitution any more than under the federal constitution. Because narcotics dogs could not communicate anything more than reason to believe the defendant's truck either contained or did not contain contraband, no reasonable privacy interest was infringed upon in permitting narcotics dogs to sniff around the vehicle. The district court's order is therefore reversed, and the case is remanded for further proceedings.

## I.

¶ 3 On two occasions in 2011, what appeared to be contraband was discovered in Heather Esparza's pick-up truck by an officer of the Craig Police Department. In each instance, she was charged with possession of drug paraphernalia and possession of two grams or less of a schedule II controlled substance. The defendant filed motions to suppress the evidence seized in each case, solely on the basis of article II, section 7 of the state constitution. Following a joint motions hearing, in which the only witnesses were four police officers involved in her arrests and the searches of her truck, the district court made findings of fact and conclusions of law.

¶ 4 As relevant to this appeal, the court found that the defendant was lawfully stopped on the first occasion for a traffic violation, and after it was determined that her driver's license had been suspended, she was arrested for driving under suspension. On the second occasion, about two months later, she was lawfully contacted in a motel parking lot after the same officer observed her driving, and when it was confirmed that her driver's license was still suspended, she was again arrested. On each occasion, the defendant's truck was left, by request and in conformity with department policy, parked at the location of her arrest. In each case, a narcotics detection canine was brought near the exterior of her parked truck, and after the dog alerted to the presence of narcotics in the vehicle, the police entered it and found a glass pipe with a white residue, which field-tested positive for methamphetamine.

¶ 5 Relying primarily on our holding in *People v. Haley*, 41 P.3d 666 (Colo.2001), the district court found that under these circumstances, reasonable suspicion was required to subject the exterior of the defendant's vehicle to a canine sniff and in these cases the police lacked the required suspicion. The court therefore found a violation of article II, section 7 of the Colorado Constitution in each case and granted both motions to suppress. The People filed a notice of interlocutory appeal, as permitted by section 16–12–102(2), C.R.S. (2011), and C.A.R. 4.1, assigning error only to the district court's ruling that reasonable articulable suspicion was constitutionally required to bring narcotics detection dogs into sufficient proximity with the exterior of the defendant's truck to make it possible for them to detect contraband inside.

## II.

¶ 6 In *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), the United States Supreme Court held that walking a trained narcotics detection dog around a car that had not been unlawfully stopped and was not being unlawfully detained did not implicate the protections of the Fourth Amendment. The Court reasoned that official conduct not compromising any legitimate interest in privacy is not a search within the meaning of the Fourth Amendment; that no interest in possessing contraband can be deemed legitimate; and therefore that governmental conduct capable of revealing nothing more than the possession of contraband cannot be a constitutionally cognizable search. *Id.* Reasoning further that narcotics detection dogs can disclose only the presence or absence of contraband, the Court concluded that while a dog sniff may be the *consequence* of an unlawful search or seizure of the person or object subjected to a sniff, it cannot itself be the *cause* of a constitutional violation. *Id.* at 409–10, 125 S.Ct. 834.

¶ 7 Shortly after the United States Supreme Court first opined that a dog sniff would not constitute a constitutionally cognizable search, *see United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), this court took issue with that determination, finding more persuasive an alternate opinion in the case analogizing dog sniffs to minimally intrusive seizures, like investigatory stops accompanied by weapons frisks. *See People v. Unruh,* 713 P.2d 370 (Colo.1986). In Unruh, this court took the position that state constitutional protections against unreasonable searches and seizures would therefore not require dog sniffs to be supported by probable cause and a warrant but *would* require them to be supported by reasonable articulable suspicion. *Id.* at 379. In neither *Unruh* nor any of the handful of other dog-sniff cases decided by this court, however, has that proposition actually controlled the outcome of a case. We have therefore had little occasion to justify or explain in detail our reasoning for this interpretation, beyond simply relying on prior constructions of the state constitution as providing greater privacy protections than the federal constitution.

¶ 8 Unlike the Supreme Court's construction of the Fourth Amendment, we have in the past interpreted our own constitution to protect as reasonable even privacy interests necessarily exposed to third-party businesses or service providers in the course of using of their commercial service. *See, e.g., People v. Corr,* 682 P.2d 20 (Colo.1984) (finding reasonable expectation of privacy in telephone toll records, despite that information necessarily being available to service provider); *People v. Sporleder,* 666 P.2d 135 (Colo. 1983) (same for out-going calls monitored by pen-registers); *Charnes v. DiGiacomo,* 200 Colo. 94, 612 P.2d 1117 (1980) (finding reasonable expectation of privacy in bank transactions, despite their necessary disclosure to, and recording by, bank personnel). We have never suggested, however, that a privacy interest in the possession of contraband could be considered reasonable or that a drug detection dog could reveal more about the contents of a closed container than some likelihood that they do or do not include contraband. Rather, our dog sniff cases have

been concerned with the nature of the particular container being pursued and any official conduct making it possible for a trained drug dog to sniff the container in the first place. In each of our prior cases, we ultimately found either that the police actually had the requisite reasonable suspicion in any event or that bringing a drug dog close to the container in question was suppressible as the consequence, or fruit, of an illegal detention. *See, e.g., Haley,* 41 P.3d at 677 (finding that defendant's vehicle was unlawfully detained when dog sniff occurred); *People v. Reyes,* 956 P.2d 1254 (Colo.1998) (finding reasonable suspicion for dog sniff of vehicle's exterior); *People v. May,* 886 P.2d 280 (Colo.1994) (finding reasonable suspicion for dog sniff of express mail package held by postal workers); *People v. Boylan,* 854 P.2d 807, 812 (Colo.1993) (finding reasonable suspicion for dog sniff of package detained by Federal Express workers); *People v. Wieser,* 796 P.2d 982, 987 (Colo.1990) (Mullarkey, J., concurring in the judgment) (producing majority for reversal by finding existence of reasonable suspicion prior to dog sniff of storage locker); *Unruh,* 713 P.2d at 377–78 (finding reasonable suspicion for dog sniff of burglarized safe).

¶ 9 Despite our broad language purporting to address dog sniffs in general, all of our cases have therefore actually involved some admixture of considerations implying a more limited rule. In *Reyes,* by expressly reserving the question "whether a canine sniff of an automobile's exterior constitutes a 'search' that must be supported by a reasonable suspicion that the vehicle contains evidence of a crime," we clearly rejected the broad proposition that a dog sniff of any closed container would, in and of itself, constitute a constitutionally cognizable search. 956 P.2d at 1256 n.1. Similarly in *Haley,* we declined to affirm suppression on the basis of an absence of reasonable articulable suspicion for a dog sniff alone. 41 P.3d at 676. Instead, we excluded consideration of a drug dog's alert from the calculus of probable cause to support a search of the defendant's vehicle only because the dog sniff was made possible by, and was therefore the product or fruit of, an unlawfully prolonged detention of the defen-

dant's vehicle. *Id.* at 672 n. 4 (relying on *People v. Redinger*, 906 P.2d 81, 85–86 (Colo. 1995) for requirement of reasonable suspicion to prolong any traffic stop beyond its original purpose); *cf. Caballes*, 543 U.S. at 407–10, 125 S.Ct. 834 (accepting that a dog sniff could be suppressed as the product of an unlawfully prolonged vehicle detention but finding none in that case).

¶ 10 In the instant interlocutory appeal by the People there is no suggestion that the defendant's truck was unlawfully stopped or detained or any challenge to the court's finding that the police lacked reasonable suspicion to believe the truck contained contraband. Nor is there any suggestion that under the circumstances of these cases the police were unable to approach the exterior of the truck after the defendant's arrest and removal without violating a reasonable privacy interest. *Cf. Wieser*, 796 P.2d 982 (Mullarkey, J., concurring in the judgment) (finding reasonable expectation of privacy in broader fenced-in storage facility containing defendant's individual storage locker that was subjected to dog sniff). The district court simply found that despite the defendant's lawful arrest and the fact that her truck was left, at her request, parked in a public place, she nevertheless retained a privacy expectation in her vehicle requiring reasonable suspicion for a dog sniff. In light of the history of dog sniff cases in this jurisdiction since *Unruh*, the further development of Fourth Amendment law concerning dog sniffs and other sensory enhancing technology, and the outcome-determinative nature of the district court's rationale, we consider it both appropriate and necessary to narrow our own pronouncements concerning the use of trained narcotics detection dogs.

¶ 11 Neither of the premises of the Supreme Court's *Caballes* rationale falls within our state constitutional exception for disclosure of private matters to commercial third parties, nor can we find differences in the language or history of article II, section 7 disputing either premise. We therefore decline to find that article II, section 7 protects any privacy interest in the possession of contraband or, as a factual and conceptual matter, that the alert of a trained narcotics detection dog can indicate anything more than the presence or absence of contraband. To the extent that we had previously suggested otherwise, we now reject the broad proposition that government conduct permitting a trained narcotics detection dog to sniff outside a closed container, in and of itself, infringes upon reasonable privacy interests in the contents of that container, thereby constituting a search within the meaning of article II, section 7.

¶ 12 Whether a particular dog sniff is a consequence of an earlier illegality so as to require its suppression as a fruit of that illegality necessarily depends upon the facts and circumstances of each case. Similarly, whether the location or conduct of particular dog sniffs may infringe on a liberty interest so as to constitute a seizure are matters not foreclosed by our holding today. *Cf. Jardines v. Florida*, 73 So.3d 34 (Fla.2011), *cert. granted in part*, —— U.S. ——, 132 S.Ct. 995, 181 L.Ed.2d 726 (2012) (noting that dog sniff conducted at private residence may also expose resident to public opprobrium, humiliation, and embarrassment). Finally, although both this court and the Supreme Court have recognized that dog sniffs may be sufficiently reliable to supply probable cause for a search, that determination necessarily rests on the foundational evidence produced in each case. No more than the federal constitution, however, does the state constitution preclude the detection of contraband in someone's possession by trained narcotics detection dogs, regardless of the reasonableness of his expectation of privacy in the area or container outside of which a dog sniff is conducted.

### III.

¶ 13 In this case, the district court unremarkably found that the defendant maintained a privacy expectation in her vehicle, even while it was left parked in a public place. Relying on broad language from our prior dog sniff cases, it therefore concluded that commencing canine sniffs of the exterior of the defendant's vehicle without reasonable suspicion of illegal drugs was prohibited by the state constitution. In light of the Su-

preme Court's holding in *Caballes,* permitting a suspicionless dog sniff of a lawfully detained vehicle, and our own reconciliation of the federal and state constitutional provisions governing dog sniffs, the district court's suppression order no longer finds support in the provisions of the state constitution.

## IV.

¶ 14 Because the dog sniffs of the defendant's vehicle in these cases were neither a search cognizable under article II, section 7 of the Colorado Constitution nor the fruit of an unlawful search or seizure, the district court's suppression order is reversed, and the case is remanded for further proceedings.

Justice HOBBS, dissenting:

¶ 1 I respectfully dissent. Our doctrine of stare decisis compels us to "apply prior precedent unless we are clearly convinced that (1) the rule was originally erroneous or is no longer sound due to changing conditions and (2) more good than harm will come from departing from precedent." *Friedland v. Travelers Indem. Co.,* 105 P.3d 639, 644 (Colo.2005). This doctrine reflects a centuries-old understanding that it is valuable to society to have stability in the law. So when considering whether to overturn precedent, it is our role not only to consider whether we were wrong in the earlier case, but whether destabilizing the law is worth it. In my view, the Majority today overturns our precedent without adequate explanation.

¶ 2 Our precedent could not be clearer: "under the Colorado Constitution, we conclude that a dog sniff search of a person's automobile in connection with a traffic stop that is prolonged beyond its purpose to conduct a drug investigation intrudes upon a reasonable expectation of privacy and constitutes a search and seizure requiring reasonable suspicion of criminal activity." *People v. Haley,* 41 P.3d 666, 672 (Colo.2001). Although we have acknowledged that the United States Supreme Court has interpreted the federal Fourth Amendment differently, *id.* at 673, we have explained that article II, section 7 of the Colorado Constitution affords broader protection in the area of dog

sniff searches. *Id.* at 671, 673. Recognizing that it is our duty to interpret the Colorado Constitution independently of the U.S. Constitution, we interpreted our state's founding document to establish a different "balance between governmental and individual interests," a balance "best struck by requiring reasonable suspicion as a prerequisite to the dog sniff search." *Id.* at 673 (citing *People v. Unruh,* 713 P.2d 370, 379 (Colo.1986)).

¶ 3 The Majority distinguishes the present case from *Haley* on the basis that the decision in *Haley* depended on the sniff search occurring after "an unlawfully prolonged detention of the defendant's vehicle." Maj. op. 57 9. The language to which the Majority cites, without quoting, is this:

> We now hold that our precedent of requiring reasonable suspicion for a dog sniff search, in combination with our precedent requiring reasonable suspicion to *prolong a traffic stop after its original purpose has been accomplished,* applies to this case.

*Haley,* 41 P.3d at 672 n. 4 (emphasis added). However, we made clear in *Haley* our analysis applied to any traffic stop "prolonged beyond its purpose to conduct a drug investigation." *Id.* at 672. Shoehorning a sniff search into a lawful traffic stop, without reasonable suspicion to conduct the sniff search, was precisely what caused the traffic stop in *Haley* to become—as we held—unlawful. In the case now before us, the Majority's only attempt at a factual distinction from *Haley* is its statement that "there is no suggestion that the defendant's truck was unlawfully stopped or detained." Maj. op. ¶ 10. But here, as in *Haley,* while the police officers had justification for stopping the vehicle and detaining it, they had no reasonable suspicion to conduct a sniff search. There is no meaningful distinction between the facts of these two cases.

¶ 4 Hedging on its ability to distinguish *Haley,* the Majority admits that its opinion requires it "to narrow our own pronouncements concerning the use of trained narcotics detection dogs." *Id.* The Majority does not dispute that these "pronouncements" in a string of our cases were holdings of this

court. Overturning them requires a stare decisis analysis that the Majority neglects.[1]

¶ 5 Not only the principle of stare decisis, but the substance of the law, leads me to conclude here that *Haley* squarely applies. The Colorado Constitution, in affording more expansive protections to citizens than the U.S. Constitution, prohibits a sniff search without reasonable suspicion. In *Haley*, we held the defendants had "a privacy interest in their persons and vehicle being free from unreasonable governmental intrusion" including a traffic-stop sniff search. *Haley*, 41 P.3d at 674. The more protective ambit of our Colorado Constitution should remain in place. The Majority simply defaults to a result-oriented conclusion that there is no "privacy interest in the possession of contraband." Maj. op. 57 8. Nor is there any privacy interest, of course, in possession of a murder weapon or stolen goods. It has always been a fallacy to suggest that finding such items justifies a search. This fallacy cannot short-circuit the inquiry into whether the search itself—the object of article II, section 7's protection—for such items is reasonable.

¶ 6 The Majority rejects the possibility "that the alert of a trained narcotics detection dog can indicate anything more than the presence or absence of contraband." Maj. op. ¶ 11. This ignores the likelihood of false positives in canine detection. The Chicago Tribune, for example, in a 2011 analysis of Illinois police department data on roadside traffic stops, "found that only 44 percent of those alerts by [drug-sniffing] dogs led to the discovery of drugs or paraphernalia."[2] Even more disturbing, "[f]or Hispanic drivers, the success rate was just 27 percent."[3] This may be because "[l]eading a dog around a car too many times or spending too long examining a vehicle, for example, can cause a dog to give a signal for drugs where there are none."[4] False positives may also arise

because "police agencies are inconsistent about the level of training they require and few states mandate training or certification."[5] So when police use a dog to sniff-search a vehicle, they introduce a likelihood that they will conduct a full search of the vehicle and its occupants without knowing that drugs are present, and without having reasonable suspicion in the first place. One implication of this fact is that the subsequent search by police officers lacks probable cause. Another is that the Majority has mischaracterized the privacy interest of the occupants of the vehicle: it is not merely the "privacy interest in the possession of contraband," but the full privacy interest against search without adequate justification—against "unreasonable searches," in the language of our constitution.

¶ 7 It is unreasonable to expect a person in this state to be constantly subject to the government using dogs to search their belongings for drugs without the government having any articulable facts raising a reasonable suspicion of the drugs' presence. Here the Majority compromises the liberty and privacy interests of Coloradans.

¶ 8 The U.S. Supreme Court has no power to interpret the Colorado Constitution. We should not reverse our precedent regarding our own constitution every time the U.S. Supreme Court decides a new case. Such an approach disregards the value of our federalist system of government.

Accordingly, I respectfully dissent.

I am authorized to state that Chief Justice BENDER joins in this dissent.

Justice HOBBS dissents, and Chief Justice BENDER joins in the dissent.

---

1. As such, the staying power of the Majority opinion is questionable. A holding dispatching so boldly with the stare decisis doctrine can itself be overturned.

2. Dan Hinkel & Joe Mahr, *Tribune Analysis: Drug-sniffing Dogs in Traffic Stops Often Wrong*, Chicago Tribune, Jan. 6, 2011.

3. *Id.*

4. *Id.*

5. *Id.*