JUSTICE HOOD,
dissenting.
.. 132 Had this suppression issue come to us before Amendment 64, it would have been an easy call. But not today. Today, it is much trickier because the mere odor of marijuana no longer signifies a violation of state law.[1] And while individual cireamstances not establishing probable cause sometimes combine to eross that constitutional threshold, I don't believe they do here. In my opinion, this search was unreasonable. Because I fear the majority too quickly draws incriminating inferences from ambiguous facts and overplays the significance of other factors raising reasonable suspicion but not amounting to probable cause, I respectfully dissent.
I. Warrantless Vehicle Searches
. When a search occurs outside the safeguards of the warrant process, we pre *1061 sume the search is unreasonable, and hence unconstitutional. People v. Vaughn, 2014 CO 71, ¶ 10, 334 P.3d 226, 229 ("Generally speaking, warrantless searches violate constitutional guarantees because they are presumptively unreasonable." (citing People v. Hill, 929 P.2d 735, 739 (Colo. 1996))). "To overcome this presumption, the prosecution has the burden of establishing that the warrantless search is supported by probable cause and is justified under one of the narrowly defined exceptions to the warrant requirement." People v. Winpigler, 8 P.3d 439, 443 (Colo, 1999) (citing People v. Garcia, 752 P.2d 570, 581 (Colo, 1988)); see also People v.. Villiard, 679 P.2d 598, 597 (Colo. 1984).
184 As the majority explains, one exception to the warrant requirement concerns automobiles. See maj. op. 114. I take no issue with the majority's recitation of this exception or its description of the probable cause standard. Instead, I part company with the majority over whether that standard has been met here.
II. Application and Analysis
{385 The majority concludes there was probable cause for the Trooper to search Zuniga's luggage because (1) Zuniga and the driver told different stories about their travels in Colorado, (2) Zuniga and the driver were exceptionally nervous, (8) the Trooper smelled a strong odor of raw marijuana, and (4) the narcotics dog, Lobo, alerted. Id. at 130. While I agree with the majority that some of these facts raise reasonable suspi-clon, I disagree with its conclusion that together they amount to probable cause.
A. Conflicting Stories
136 The driver and Zuniga related very different accounts of their travels, and 'the majority is correct that the "vast inconsisten-cles" in their stories allowed for an inference of criminal activity. Id, at €26, But I also agree with the majority that the divergent stories alone do not amount to probable cause justifying a search of the vehicle. Therefore, I turn to the other cirenmstances on which the majority relies.
B. Nervousness -
137 The majority discusses how jittery Zuniga and his companion seemed to be. But as any generally law-abiding citizen who's been stopped for a traffic violation will attest, everybody ''gets nervous when the flashing lights appear. Courts therefore realize "[njer-vousness is of limited value." United States v. Simpson, 609 F.3d 1140, 1147 (10th Cir. 2010). "[Ilt is common for most citizens, 'whether innocent or guilty-to exhibit signs of nervousness when confronted by a law enforcement officer'" Id. (quoting United States v. Wood, 106 F.3d 942, 948 (10th Civ. 1997));, see also People v. Goessl, 186 Colo. 208, 526 P.2d 664, 665 (1974) ("'The People suggest that the defendant's nervous state in the presence of the officer indicates probable cause. Such a suggestion must be rejected. It is normal for law-abiding persons, as well as persons guilty of eriminal activity, to be nep-vous when stopped by a policeman for a traffic offense."). Moreover, "unless the police officer has had significant knowledge of a person, it is difficult, even for & skilled police officer, to evaluate whether a person is acting normally for them or nervously." Simpson, 609 F.3d at 1147-48.
"38 Perhaps this explains why the majority repeatedly stresses that both the driver and Zuniga exhibited "extreme" nervousness. See maj. op. 1T 1-2, 5, 27. There are plenty of specific manifestations of nervousness in this record-the shaking hands, a sweaty face, the stutter, failure to make eye contact-but the Trooper observed these things in the driver, not Zuniga. While the record contains generic comments that Zuniga, "also ap-pearled] nervous," there is little in the way of particular obsérvations to support that assessment. And when the Trooper testified "the nervousness of the driver and the passenger" was "to the extreme that it wasn't normal," he pointed to the sweaty face and failure to make eye contact-things he had described seeing from the driver-to make the point.
139 Big deal, you might say; surely the driver's behavior still goes to whether there is probable cause to search the car under the totality of the cireumstances? True enough. But if we are to let common sense guide us, *1062 doesn't it make sense that drivers will often appear more nervous than their passengers? After all, the driver is the one on the hook for the ticket where, as here, the initial stop is made for a purported traffic violation. See People v. Crippen, 223 P.3d 114, 117 (Colo. 2010) (probable cause involves "commonsense conclusions about human behavior"). And the evidence of even the driver's "extreme" nervousness in this case isn't so impressive. For example, the Trooper noted the driver's stutter, but there is no evidence the Trooper was familiar with the driver's speech patterns. Thus, in my estimation, this evidence of nervousness is just not that revealing,
C. The Odor of Marijuana
[ 40 The majority concludes the trial court erred by failing to consider the odor :of marijuana, see maj. op. 128, but the trial court's probable cause analysis did address the smell of marijuana. As revealed by the trial court's patient engagement with questions from the prosecutor, the court considered all the information on which the majority relies. It simply did not perceive the odor of marijuana, as inherently suspicious and was appropriately cautious about drawing incriminating inferences from ambiguous facts.
41 Given marijuana's status in this jurisdiction, just smelling marijuana around a person at least twenty-one years old[2] does not provide even a reasonable suspicion of criminal activity, Typically, law enforcement will need reason to believe a suspect possesses more than an ounce to establish eriminality under state law. So while I can agree with the majority that the odor of raw marijuana is a cireumstance that can "contribute" to a probable cause showing, id., the scent on its own doesn't really tell us anything these days.
[ 42 To bolster its conclusion that the scent of marijuana can still contribute to probable cause, the majority looks back in time to Mendez v. People, 986 P.2d 275 (Colo. 1999). Recall that case involved a 1995 warrantless search of a motel room after an officer smelled burning marijuana while standing in the hall, Id. at 278. We credited the scent in establishing probable cause even though the officer did not know if the use of marijuana there complied with Colorado's medical marijuana regime. Id. at 281.& n. 4. Of course, Mendez arose in a very different regulatory world in which marijuana was illegal under state law though medicinal use could provide a defense to prosecution in some cireum-stances. See id.
143 Despite the changes wrought by Amendment 64, it is true, as it was true in the time of Mendez, that not all marijuana-related activities are legal in Colorado, But we rested our decision on a common-sense perception that the smell of burning marijuana gave rise "to a very high probability" that a search would fevea} contraband or evidence of a crime. Id. at 281. Today, however, unlike in 1995, possession of up to an ounce of marijuana by people twenty-one years of age and older is legal, See Colo. Const. art, XVIII, § 16(8)(a). Therefore, it no longer stands to reason that the same probability of state-law criminality attends the scent of marijuana.
{44 The majority also looks to State v. Senna, 194 Vt, 283, 79 A.3d 45, 50-51 (2018), where the Vermont Supreme Court concluded the smell of marijuana continued to have significance as an indicator of criminal activity despite reform of Vermont's marijuana laws. Maj. op. " 23. Reliance on Senna seems misplaced given that registered patients in Vermont were merely granted exemptions from arrest and prosecution for some forms of marijuana possession. See 79 A.S3d at 49 ("[The law creates a defense to prosecution."). Further, the Vermont court expressly distinguished its laws from the more permissive laws of Massachusetts, Id. That state has decriminalized possession of less than one ounce of marijuana, though possession remains a civil violation. See Commonwealth v. Overmyer, 469 Mass. 16, 11 N.E.3d 1054, 1058 (2014), Consequently, the Supreme Judicial Court of Massachusetts has held that the smell of burnt marijuana "no longer. constitutes a specific fact suggesting eriminality," id, (discussing Commonwealth v. Cruz, *1063 459 Mass, 459, 945 N.E.2d 899 (2011)), and that the smell of unburnt marijuana standing alone does not supply probable cause to search a vehicle, id, at 1055. Colorado has gone further than either Vermont or Massachusetts, For adults twenty-one years and older, possession of up to an ounce of mariJuana is not merely decriminalized, it is legal. See Colo. Const. art. XVIII, § 16(8)(a).
T45 Perhaps because the scent alone is largely meaningless, the majority also contends that "detection of a 'heavy odor' of raw marijuana contributed to the Trooper's conclusion that marijuana was in the vehicle, potentially in an illegal amount." Maj. op. 28. But this is puzzling because it suggests that a "heavy" smell actually has something to do with weight.
T 46 Of course, the strength of a smell is a subjective determination. See Overmyer, 11 N.E.8d at 1059 (citing study and explaining that smell can be affected by gender, age, and ambient temperature, among other factors). But even if scent intensity could be standardized and made objective ("On a 1 to 10 scale, it smelled like an 8."), nothing here demonstrates that the pungeney of a smell relates to the amount of the substance giving off the seent. Even if a direct relationship between smell and drug weight can be established in theory, the record before us won't allow that inference in this case. On the contrary, the Trooper disclaimed any ability to discern from his own sense of smell the weight of marijuana present, and he made clear his dog has no such power either.
147 So, even if the odor of marijuana is relevant, how suspicious is it these days? I worry there may be a tendency to let this aroma keep tipping the balance in favor of searches, stops, and arrests, despite the decision of the people of Colorado to legalize possession of marijuana in small quantities. Thus, here, I'm still left short of probable cause because there is a conspicuous absence of evidence of an fllegal quantity.
D. The Dog Alert -
148 Past cases from this court and the United States Supremé Court establish that a dog alert by itself can establish probable cause to support a search, provided the dog's training and experience give sufficient reason to believe the alert is reliable. See Florida v. Harris, -U.S. -, 133 S.Ct. 1050, 1057, 185 L.Ed.2d 61 (2013); People v. Esparza, 2012 CO 22, ¶ 12,272 P.3d 367, 370.
149 It is revealing that the majority derives probable cause from so many sources instead of simply resting on the dog alert, The majority is forced to take this route because this case differs from other dog sniff cases in a critical respect. In cases like Harris and Esparza, the dogs were trained to alert for contraband and only contraband.[3] In this case, Lobo is trained to alert for marijuana, cocaine, methamphetamine, and heroin. Under the laws of this state, one of these substances is legal, if highly regulated. And as the Trooper testified, Lobo's alert is not drug-specific.
T50 To conclude as the majority does that the alert "suggested that illegal drugs were present in the vehicle" goes too far. Maj. op. 129, The alert did not "suggest" the pres *1064 ence of illegal drugs in the sense that the alert "show[ed] indirectly; fimpl{ied]; [or] intimate[d]" that illegal drugs were present. Suggest, Webster's New College Dictionary (2005). The alert was consistent with the presence of illegal drugs just as it was consistent with their absence. And, contrary to the argument made by the People below, the fact that Lobo alerts for four substances does not mean there is a 25 percent chance the alert was for marijuana and thus a 75 percent chance the alert was for the other drugs, As the trial court recognized, the dog's alert in this case was highly ambiguous.
T 51 Therefore, I do not find Lobo's eryptic alert to be helpful either, Given the marginal significance of the divergent travel stories, and the insignificance of nervousness and the odor of marijuana, I am not persuaded that those facts somehow throw the dog's ambiguous alert into a more nefarious light. |.
E. Totality
152 Even if the facts are individually weak, does putting them all together create probable cause? I don't think so, As the trial court observed, "Something was odd. But the fact that something doesn't add up and something is odd does not equal probable cause." Marshaling several peculiarities suggesting a suspect has been up to no good does not provide probable cause that drugs will be found in a particular location, See People v. Leftwich, 869 P.2d 1260, 1265 (Colo, 1994) ("The totality-of-the-cirenmstances test does not lower the standard for probable cause determinations."). The state constitution may have changed,; but it seems our empirical intuitions about martjuana and crime are still catching up. Ask yourself this: would we find probable cause here without our residual preconceptions from the world before Amendment 647 If there were no scent of marijuana, would we say that divergent stories and extreme nervousness amount. to probable cause for the government to open your car, start rummaging through your bags, and dump out your -cooler? I doubt it, And if not, then how much emphasis are we effectively placing on the odor of marijuana in this case? Too much, I think,
IIL Conclusion
53 In our post-Amendment-64 world, the totality of these relatively innocuous cireum-stancés does not a recipe for probable cause make. Therefore, I respectfully dissent.

. As the majority notes, Colorado voters passed Amendment 64 and added to their constitution a section titled, "Personal use and regulation of marijuana." Colo. Const. art. XVIII, § 16. This - 2012 change permits possession of up to one ounce of marijuana by people twenty-one years of age and older, Colo. Const.. art, XVIII, § 1603)(@).

. It is reasonable to think the Trooper knew ' Zuniga was over twenty-one given that he testified to taking Zuniga's identification and running a warrant check that came back negative.

. Relatedly, the assumption that narcotics detection dogs only detect contraband has been critical in past cases holding that dog sniffs are not searches under the Fourth Amendment. The Supreme Court concluded that exposing a person's luggage to a "well-trained narcotics detection dog" is not a search because "the sniff discloses only the presence or absence of narcotics, a contraband item." United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). "[The canine sniff is sui generis" because it can only reveal what a person has no right to possess, Id, "[Aluny interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest," " Illinois v. Caballes, 543 U.S. 405, 408, 125 S.Ct. 834, 160 LEd.2d 842 (2005) (quoting United States v. Jacobsen, 466 U.S. 109, 123, 104 S.Ct 1652, 80 L.Ed.2d 85 (1984).
Our cases addressing sniffs as searches rest on similar assumptions that dogs are in effect reliable contraband-detection machines. See Esparza, ¶ 11, 272 P.3d at 370 (declining to find "as a factual and conceptual matter, that the alert of a trained narcotics detection dog can indicate anything more than the presence or absence of contraband"). But see id. at 16, 272 P.3d at 372 (Hobbs, J., dissenting) {explaining the problem of false positives). The issue of whether this sniff was a search is not before us. Like the majority, I decline to resolve it.