2013 CO 32

**The PEOPLE of the State of Colorado,
Plaintiff-Appellant**

**v.**

**Paul David MASON, Defendant-Appellee**

**Supreme Court Case No. 13SA49**

Supreme Court of Colorado,
En Banc.

June 3, 2013

Pete Hautzinger, District Attorney, Twenty-First Judicial District, Jason R. Conley, Deputy District Attorney, Grand Junction, Colorado, for Plaintiff-Appellant.

Douglas K. Wilson, Public Defender, Scott J. Burrill, Deputy Public Defender, Grand Junction, Colorado, for Defendant-Appellee

Justice COATS delivered the Opinion of the Court.

¶ 1 The People filed an interlocutory appeal pursuant to section 16–12–102(2), C.R.S. (2012), and C.A.R. 4.1, challenging the trial court's suppression of drugs discovered in the defendant's pick-up truck. Grounds for the search came from the alert of a narcotics detection canine led around the vehicle. Although the district court upheld the initial traffic stop, it found that the defendant was illegally detained at the time of the dog sniff because the purpose for the initial stop of his vehicle had already been accomplished and no other reasonable suspicion existed to support further investigation. The court therefore suppressed the results of the subsequent search as the product of an illegal detention.

¶ 2 Because the officers lacked reasonable articulable suspicion to detain the defendant for further questioning or investigation after issuing him a summons and completing the traffic stop, the contraband seized from his vehicle was properly suppressed as the product of an illegal detention. The district court's suppression order is therefore affirmed, and the case is remanded for further proceedings.

## I.

¶ 3 Following the discovery of contraband in his pick-up truck, Paul Mason was charged with unlawful possession of more than two grams of methamphetamine. He moved to suppress all evidence seized from his truck on grounds that the officers lacked reasonable articulable suspicion for the initial stop, as well as his subsequent detention while awaiting arrival of a narcotics canine unit. The motion was heard solely on the testimony of the officer who first stopped the defendant's truck and a police investigator who requested the canine unit, and following the hearing, the district court issued written findings of fact and conclusions of law.

¶ 4 The court found that police officers were conducting surveillance of a residence at 620 Hudson Bay Drive, in Mesa County, which they believed to be the site of illegal drug activity. Police witnessed a white truck leave the house, and after observing it make a late turn signal and incomplete stop at a stop sign, a deputy sheriff pulled it over. After further confirming that the defendant's license was under suspension, the deputy decided to issue him a summons.

¶ 5 While the deputy was completing the necessary paperwork, the defendant declined the request of another officer to search his truck. However, a sheriff's investigator who had heard the defendant's name over the radio notified the stopping deputy that he had reasonable suspicion to believe the defendant had just bought drugs at the Hudson Bay address. Based on that information, the defendant and his truck were detained even after the required paperwork for his summons had been completed. The detaining deputy retained the defendant's identification

and informed him that he was still not free to leave.

¶ 6 When the investigator arrived at the scene some five or ten minutes later, the decision was made to call for a canine unit. After approximately an additional twenty minutes, a trained drug-sniffing dog arrived on the scene and alerted on the driver's side door of the defendant's truck. A search revealed drugs in a pouch on the driver's side floorboard.

¶ 7 At the suppression hearing, the investigator testified that his suspicions concerning the defendant were based on two things. He testified that he was aware that a resident of the Hudson Bay home had been involved in methamphetamine distribution, although she had not been arrested until sometime after the incident in question. In addition he testified that he had obtained information about two weeks prior to the defendant's arrest from ·a woman who was in possession of methamphetamine while in custody for shoplifting, to the effect that the defendant and another man were involved in the distribution of methamphetamine.

¶ 8 The district court upheld the initial traffic stop but found that the purpose for that investigatory stop had been accomplished before the dog arrived. It further found that the police lacked reasonable articulable suspicion to detain the defendant until the dog arrived. With regard to the Hudson Bay residence, the court found that the prosecution produced no evidence to indicate the basis for the investigator's assertion that the resident was known to be connected with illegal drug distribution or to indicate what the defendant was doing there. With regard to the woman who identified the defendant as a drug dealer, it found that the prosecution produced no evidence to substantiate her credibility or the reliability of her information, and further, that her information, even if it were reliable, was two weeks old. The court concluded that the detention of the defendant and his truck were not supported by reasonable articulable suspicion and that the subsequent search was the product of an illegal detention. It therefore granted the defendant's motion and suppressed the contraband seized from his truck.

¶ 9 The People filed an interlocutory appeal pursuant to section 16-12-102(2) and C.A.R. 4.1.

## II.

¶ 10 It is now settled that walking a trained narcotics detection dog around a car that has not been unlawfully stopped or detained does not implicate the protections of either the Fourth Amendment or Article II, section 7 of the state constitution. *See Illinois v. Caballes,* 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); *People v. Esparza,* 2012 CO 22, ¶ 2, 272 P.3d 367, 368. However, a stop that is justified solely by an interest in issuing a traffic ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *Caballes,* 542 U.S. at 407, 124 S.Ct. 2504. We have long recognized that when the purpose for which an investigatory stop was instituted has been accomplished and no other reasonable suspicion exists to support further investigation, there is no justification for continued detention of citizens. *People v. Redinger,* 906 P.2d 81, 85–86 (Colo.1995); *see also Esparza,* 272 P.3d at 369–70; *People v. Cervantes–Arredondo,* 17 P.3d 141, 147 (Colo.2001).

¶ 11 "Reasonable articulable suspicion" refers to that "minimal level of objective justification" required to support an investigatory stop and detention—a form of personal seizure that is less intrusive than an arrest and can be conducted on lesser justification than probable cause. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *People v. Polander,* 41 P.3d 698, 703 (Colo. 2001). Although this level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence and is less demanding even than the "fair probability" standard for probable cause, *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Polander,* 41 P.3d at 703, it nevertheless demands the articulation of reasons to believe the person to be stopped is committing, has committed, or is about to commit a crime, beyond an inchoate and unparticularized hunch. *Sokolow,* 490 U.S. at 8, 109 S.Ct.

1581; *Polander*, 41 P.3d at 703. Similarly, although reasonable suspicion is a less demanding standard in the sense that it can arise from information that is less reliable than that required to show probable cause, reliability is nevertheless also a consideration in the evaluation of reasonable suspicion. *Polander*, 41 P.3d at 703.

¶ 12 As with probable cause, the totality-of-the-circumstances test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also People v. Pannebaker*, 714 P.2d 904 (Colo. 1986), has also replaced the "two-pronged" test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), for purposes of evaluating reasonable articulable suspicion. *Polander*, 41 P.3d at 703. Nevertheless, the concerns of the former test for veracity, reliability, and basis of knowledge continue to be highly relevant to the value of information provided to the police, as distinguished from information they have acquired through firsthand observation. *Id.* at 702. While it therefore may no longer be necessary to provide the court with sufficient information to evaluate the credibility of a particular informant or the manner in which he came by particular information, and even an anonymous tip may be considered sufficiently reliable where not easily obtained, predictive detail contained in it can be corroborated, reasonable suspicion to justify a stop may not be predicated solely on bald assertions, no matter how facially damning they may be. *Florida v. J.L.*, 529 U.S. 266, 269, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); *White*, 496 U.S. at 332, 110 S.Ct. 2412; *Gates*, 462 U.S. at 245, 103 S.Ct. 2317; *Polander*, 41 P.3d at 703.

### III.

¶ 13 The People do not challenge the district court's intermediate finding that the purposes of the initial traffic stop were complete upon issuance of a summons, but only its conclusion that the officers lacked reasonable articulable suspicion to detain the defendant until the narcotics canine unit could arrive. As they did in the district court, the People rely on the same two sources of information described by the sheriff's investigator at the suppression hearing as the basis for his suspicions. Although they do not expressly challenge the district court's findings of fact as clearly erroneous, they understand the testimony of the investigator to differ from the findings of the court in at least one significant respect.

¶ 14 The People assert that the investigator testified that the woman who provided him information two weeks before the defendant's arrest not only identified the defendant as a person involved in the distribution of methamphetamine but also indicated that the very distribution ring in which he operated also included the resident of the Hudson Bay address. In fact, the investigator testified that he could not say whether this woman identified or mentioned in any way the resident of the Hudson Bay address, and the only residence implicated by information he attributed to this particular informant had a different address altogether. According to the investigator's testimony, any involvement of the Hudson Bay address, or resident thereof, in illegal drug activity was "later discovered" during "other investigations." As the district court found, the prosecution produced no evidence indicating that the woman informant suggested any connection between the defendant and the Hudson Bay address or, for that matter, any awareness of drug activity at that address at all.

¶ 15 With regard to the Hudson Bay address in general, or a resident of that address in particular, the investigator testified merely that his suspicions were based on other investigations. He did not describe those other investigations or suggest that he was personally involved in them, or suggest that his suspicions were based on his own firsthand observations or those of fellow officers. He did not testify whether these other investigations involved information from third parties and, if so, why those parties should be regarded as credible or their information reliable. As the district court found, no evidence whatsoever was offered to explain why law enforcement officers believed illegal drug activity was occurring at the Hudson Bay residence and no evidence was offered concerning any activities of the defendant at that address.

¶ 16 In the absence of any evidence connecting the defendant with recent criminal activity, even if the unnamed woman informant were treated as a "citizen informant,"

see *Polander*, 41 P.3d at 703–04, and her possession of methamphetamine on her person offered her statement some reliability, her two-week-old information implicating the defendant in illegal drug activity would not offer support for his stop and detention under the circumstances of this case. Reasonable suspicion that someone is involved in the illegal distribution of drugs is, in and of itself, insufficient to justify his investigative stop and detention whenever and wherever the police choose. And nothing in the woman's information provided predictive detail about the defendant's operations or gave any reason to believe he was committing, was about to commit, or had recently committed illegal distribution of methamphetamine at the time of his stop and detention.

## IV.

¶ 17 Because the officers lacked reasonable articulable suspicion to detain the defendant for further questioning or investigation after issuing him a summons and completing the traffic stop, the contraband seized from his vehicle was properly suppressed as the product of an illegal detention. The district court's suppression order is therefore affirmed, and the case is remanded for further proceedings.