18CA0597 Peo v Snodgrass 01-06-2022 COLORADO COURT OF APPEALS Court of Appeals No. 18CA0597 El Paso County District Court No. 17CR3103 Honorable Jill M. Brady, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Matt William Snodgrass, Defendant-Appellant. JUDGMENT REVERSED IN PART AND VACATED IN PART Division VII Opinion by JUDGE NAVARRO Pawar, J., concurs Grove, J., concurs in part and dissents in part NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 6, 2022 Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Kira L. Suyeishi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Matt William Snodgrass, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of a controlled substance, possession of drug paraphernalia, and illegal use, consumption, or possession of marijuana in a motor vehicle. We reverse in part and vacate in part. I. Factual and Procedural History ¶ 2 Late at night in May 2017, Snodgrass was sitting alone in his parked car in an empty shopping center parking lot when Officer Justis Reder approached. The officer noticed Snodgrass slumped over the steering wheel with his head tilted forward. Snodgrass said he did not have a driver’s license but gave his name. He asked the officer to let him go, and he said he did not have any warrants. According to the officer’s later testimony, Snodgrass seemed “very jittery,” nervous, and like he “was possibly hiding something.” ¶ 3 Police dispatch reported that Snodgrass had an active arrest warrant, and Reder called for backup. After Officer Shannon Daly arrived, Reder arrested Snodgrass and found an unsealed baggie of marijuana in his pocket. ¶ 4 Reder believed at the time that the marijuana weighed less than one ounce and, in fact, later testing revealed that it weighed 
2 .20 ounces — a legal amount under Colorado law. Reder also believed that (1) it is very common for someone with marijuana or any drug on their person to also have marijuana or other drugs in their car; and (2) because it is illegal to transport marijuana in an “open container” like an unsealed baggie, the possession of such a baggie indicated “there is possibly other illegal substances in that vehicle.” ¶ 5 Daly conducted a “cursory search” of the driver’s door compartment and found an empty marijuana container. Daly then brought out her trained police dog who alerts to marijuana and methamphetamine, among other drugs. The dog alerted to the driver’s side of the car. So Daly conducted a hand search of the car, which uncovered a small bag of methamphetamine and a pipe. ¶ 6 Snodgrass was charged with possession of a controlled substance (methamphetamine); possession of drug paraphernalia; and illegal use, consumption, or possession of marijuana in a motor vehicle. ¶ 7 Before trial, Snodgrass moved to suppress the items found in the car following the dog sniff. He argued that the officers’ deployment of the marijuana-detecting dog violated the Colorado 
3 Constitution as interpreted in People v. McKnight, 2017 COA 93 (McKnight I), aff’d, 2019 CO 36 (McKnight II), because they did not have a reasonable suspicion of criminal activity before the dog sniff.
1 ¶ 8 The trial court denied the suppression motion, reasoning that McKnight I was not binding because it was an unpublished opinion.
2 Relying on pre-McKnight I case law, the court concluded that reasonable suspicion was not required because the dog sniff was not a search under the state constitution. But the court also ruled that, even if McKnight I were binding, the dog sniff was legal because the officers reasonably suspected that evidence of illegal activity would be found in Snodgrass’s car. Because the court decided that the dog sniff was legal, the court did not resolve the prosecution’s contention that the officers relied in good faith on pre-
McKnight I case law. 1 At the time, People v. McKnight, 2019 CO 36, had not yet been announced. 2 The trial court was mistaken; the opinion was published and thus precedential. See C.A.R. 35(e). 
4 ¶ 9 At trial, Reder and Daly testified to their encounter with Snodgrass, and the trial court admitted into evidence body camera footage capturing the encounter. The court also admitted the methamphetamine and pipe found in Snodgrass’s car. A jury convicted him as charged. II. Suppression of Items Found As a Result of the Dog Sniff ¶ 10 Snodgrass contends that the trial court erred by denying his motion to suppress the methamphetamine and pipe discovered after the dog sniff of his car. Specifically, he argues that, because the dog could detect marijuana, the dog sniff was a search that was not supported by probable cause as required by McKnight II. According to Snodgrass, everything found after the dog sniff was the fruit of that illegal search. We agree, and we also reject the People’s claim that suppression was unwarranted because the officers acted in good faith reliance on existing judicial precedent. A. Probable Cause Did Not Exist ¶ 11 Appellate courts apply a mixed standard of review to suppression issues. People v. Chavez-Barragan, 2016 CO 66, ¶ 34. We defer to a trial court’s findings of fact as long as they are 
5 supported by the record, and we review de novo the court’s conclusions of law. People v. Cattaneo, 2020 COA 40, ¶ 15. ¶ 12 The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution prohibit unreasonable searches and seizures. See People v. Allen, 2019 CO 88, ¶ 15. A warrantless search or seizure is presumptively unreasonable and thus unconstitutional unless an exception to the warrant requirement applies. See Cattaneo, ¶ 17. One such exception is the automobile exception, which allows an officer to search a car without first obtaining a warrant if the officer has lawfully stopped the car and has probable cause to believe it contains evidence of a crime. See McKnight II, ¶ 24. ¶ 13 In McKnight II, ¶ 7, our supreme court held that a sniff from a drug-detection dog trained to alert to marijuana constitutes a search under article II, section 7 of the Colorado Constitution because that sniff can detect lawful activity — namely, the legal possession of up to one ounce of marijuana by adults twenty-one and older. The court further held that, “in Colorado, law enforcement officers must have probable cause to believe that an item or area contains a drug in violation of state law before 
6 deploying a drug-detection dog that alerts to marijuana for an exploratory sniff.” Id. ¶ 14 The People do not dispute that McKnight II applies here, and we agree that it applies because Snodgrass’s convictions are not yet final. See People v. Versteeg, 165 P.3d 760, 766 (Colo. App. 2006). ¶ 15 A police officer has probable cause to conduct a search when the facts available to the officer “‘would warrant a [person] of reasonable caution in the belief’ that contraband or evidence of a crime is present.” People v. Zuniga, 2016 CO 52, ¶ 16 (citation omitted). Probable cause is an objective, commonsense determination based on the totality of the circumstances. Id. ¶ 16 In support of probable cause, the People rely on the following circumstances known to the officers before the dog search: • Snodgrass was unusually nervous and made unusual comments such as saying he did not have any warrants. • He had a legal amount of marijuana in his pocket. • Officer Reder testified that the baggie of marijuana “raised flags” because it was illegally transported in an “open container.” 
7 • Reder testified that it is common to find illegal drugs in a car when drugs are found on the occupant’s body. • An empty marijuana container was found in the driver’s compartment of the car. We conclude that these facts did not supply probable cause to believe that Snodgrass’s car contained drugs illegal under state law. ¶ 17 First, Snodgrass’s uncommon nervousness and curious comment about not having warrants could be explained by the fact he actually had a warrant that he was worried the police would discover. Although a readily apparent alternative explanation does not make these behaviors irrelevant to the probable cause analysis, it tempers their significance. ¶ 18 Second, contrary to the officer’s belief, the baggie of marijuana was not, in fact, an illegal open marijuana container. A receptable containing marijuana is an unlawful open marijuana container only if it is open or has a broken seal and “[t]here is evidence that marijuana has been consumed within the motor vehicle.” § 42-4-
1305.5(1)(c), C.R.S. 2021. As explained infra, the evidence did not show such use here; the officers did not even suggest that it did. 
8 ¶ 19 As a result, the facts known to the officers simply showed unusual (but understandable) nervousness and entirely legal conduct. Of course, non-criminal and legally ambiguous conduct may be relevant to the probable cause inquiry. See Zuniga, ¶ 21. Even so, the non-criminal conduct here was merely possessing a legal amount of marijuana in a legal receptacle while also possessing a legal empty marijuana container. We acknowledge the officer’s opinion that finding illegal drugs in a car is more likely where legal drugs are found on a driver or passenger. But we cannot assign a great deal of weight to that opinion, else we would give officers essentially carte blanche to search a car whenever they find a legal amount of marijuana on the car’s driver or passenger. So, even considered in their totality, these circumstances were not sufficient to establish probable cause to believe Snodgrass’s car contained illegal drugs. Cf. State v. Carter, 848 P.2d 599, 602 (Or. 1993) (“A fact that merely supports an inference that some other fact is possible — as one among the range of many other and different possibilities — does not support an inference that any specific one of the possible facts is itself probable.”). 
9 ¶ 20 Comparisons to Zuniga and McKnight II confirm our conclusion. In Zuniga, the supreme court concluded that the troopers had probable cause to search the vehicle based on (1) a drug-detection dog’s alert to the car; (2) the “vast inconsistencies” between the two defendants’ stories about their time in Colorado; (3) the defendants’ “exceptional nervousness” during the traffic stop; and (4) one trooper’s detection of a “strong odor of raw marijuana.” Zuniga, ¶¶ 1, 26-30. Plainly, the facts supporting probable cause in Zuniga were stronger than in this case. ¶ 21 The supreme court found probable cause lacking in McKnight II, ¶ 58, where the evidence showed proximity to a house where illicit drugs had been found before and the presence of a person who had used an illegal drug at some point. Here, there was not even a clear connection to past illicit drug possession. Hence, if the facts of McKnight II were insufficient to establish probable cause, the facts in this case were not enough to establish a fair probability that contraband under state law would be found in Snodgrass’s car. The dog search of his car, therefore, violated the Colorado Constitution. 
10 B. Good Faith Exception Does Not Apply ¶ 22 Although the Fourth Amendment contains no provision precluding the use of evidence obtained in violation of its commands, the United States Supreme Court has developed the exclusionary rule to suppress such evidence in order to deter unlawful police conduct. See Casillas v. People, 2018 CO 78M, ¶ 19; People v. Dominguez-Castor, 2020 COA 1, ¶ 19. The Colorado Supreme Court has concluded that the exclusionary rule also applies to violations of article II, section 7 of the Colorado Constitution. See McKnight II, ¶ 61; People v. Morley, 4 P.3d 1078, 1080 (Colo. 2000). ¶ 23 The exclusionary rule, however, should not be automatically applied every time a constitutional violation is found. See Casillas, ¶ 21. For instance, “when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply.” Davis v. United States, 564 U.S. 229, 249-50 (2011); see People v. Barry, 2015 COA 4, ¶ 34. For purposes of this exception, precedent is binding if it addressed or validated the police conduct at issue in the case where the exception is asserted. See People v. Folsom, 2017 COA 146M, ¶ 19. 
11 ¶ 24 Whether a police officer’s actions were in objectively reasonable reliance on appellate court precedent is a legal question we review de novo. Barry, ¶ 20. ¶ 25 Recall that the dog sniff in this case took place before McKnight I or McKnight II had been announced. The People contend that suppression of the evidence was not warranted because the police deployed the dog in objectively reasonable, good faith reliance on earlier Colorado Supreme Court cases holding that walking a narcotics-detection dog around a car is a not a search under the state constitution. ¶ 26 True, in People v. Esparza, 2012 CO 22, ¶ 11, our supreme court rejected the proposition that permitting a trained narcotics dog to sniff outside a closed container such as a car is a search within the meaning of the state constitution. The explicit premise of this holding was that the alert of a trained narcotics-detection dog could indicate nothing more than the presence or absence of contraband (i.e., an item illegal to possess). Id.; see also id. at ¶ 8 (“We have never suggested, however, that a privacy interest in the possession of contraband could be considered reasonable or that a drug detection dog could reveal more about the contents of a closed 
12 container than some likelihood that they do or do not include contraband.”); People v. Holmes, 959 P.2d 406, 417 (Colo. 1998) (recognizing that “contraband” generally means goods whose importation, exportation, or possession is forbidden). Shortly thereafter, the supreme court repeated Esparza’s conclusion that “walking a trained narcotics detection dog around a car that has not been unlawfully stopped or detained does not implicate the protections of either the Fourth Amendment or Article II, section 7 of the state constitution.” People v. Mason, 2013 CO 32, ¶ 10. ¶ 27 The Esparza decision, however, was announced before the 2012 passage of Amendment 64 to the Colorado Constitution. See Colo. Const. art. XVIII, § 16. And, while Mason was announced months after Amendment 64 took effect, the Mason court did not address the amendment’s impact. Cf. McKnight II, ¶¶ 28, 34 (including Mason as a part of “Colorado Law: Pre-Amendment 64”). Instead, the court upheld the suppression of evidence for reasons unrelated to whether the dog sniff constituted a search. See Mason, ¶ 17. ¶ 28 Amendment 64 provides that it is “not unlawful and shall not be an offense under Colorado law” for a person who is at least 
13 twenty-one years of age to possess one ounce or less of marijuana. Colo. Const. art. XVIII, § 16(3). Because such a person may lawfully possess marijuana in a small amount, a drug-detection dog that alerts to marijuana can no longer be said to detect only contraband. McKnight II, ¶ 43. Therefore, following Amendment 64, “the rationale underlying Esparza no longer holds true” in the case of a dog trained to alert to marijuana in any amount. Id. Amendment 64 was adopted well before the dog sniff in this case. ¶ 29 Additionally, in a case announced before the dog sniff here, our supreme court expressly declared that Amendment 64 made “marijuana use, possession, and growth . . . lawful under Colorado law in certain circumstances.” Zuniga, ¶ 18. Because “Colorado law makes certain marijuana-related activities lawful and others unlawful,” the court held the odor of marijuana is still suggestive of criminal activity and can contribute to a probable cause determination. Id. at ¶¶ 18, 23. In doing so, however, the court recognized that the odor of marijuana is a legally ambiguous fact in light of Amendment 64. See id. at ¶ 21; see also id. at ¶ 29 (The dog’s “alert could have stemmed from the two men’s possession of a legal amount of marijuana, but it also could have stemmed from the 
14 possession of an illegal amount of marijuana or any amount of cocaine, methamphetamine, or heroin.”); People v. Cox, 2017 CO 8, ¶¶ 3, 17 (applying Zuniga). ¶ 30 Accordingly, as indicated in Zuniga, Amendment 64 eliminated the premise of Esparza’s conclusion that a sniff by a marijuana-
detecting dog is not a search under the state constitution. See McKnight II, ¶ 36 (explaining that the supreme court in Zuniga acknowledged that, “with the legalization of small amounts of marijuana, a dog’s alert doesn’t provide a yes-or-no answer to the question of whether illegal narcotics are present in a vehicle”). Because the state of affairs addressed in Esparza (i.e., where a dog’s alert exposes only contraband) no longer existed at the time of the search here, we are not convinced that it was objectively reasonable for the officers to rely on Esparza. Cf. United States v. Leon, 468 U.S. 897, 919 n.20 (1984) (“The objective standard . . . requires officers to have a reasonable knowledge of what the law prohibits.”). ¶ 31 Indeed, because the premise of Esparza (and Mason) no longer existed after Amendment 64 became effective, the supreme court in McKnight II had no need to, and did not, overrule Esparza as wrongly decided. Cf. Davis, 564 U.S. at 232 (concluding that the 
15 good faith exception to the exclusionary rule may apply “when the police conduct a search in compliance with binding precedent that is later overruled”). Rather, the McKnight II court recognized that Esparza was not applicable in light of Amendment 64. See McKnight II, ¶ 43. (Thus, the court had no reason to wrestle with stare decisis principles.) To reiterate, Amendment 64 became effective before the dog search here. ¶ 32 In other words, the Esparza decision did not address the question presented here: “whether the sniff of a dog trained to detect marijuana in addition to other substances is a search under a state constitution in a state that has legalized marijuana.” McKnight II, ¶ 47. Because no binding precedent had approved the police conduct at issue here, we cannot say that the police acted in objectively reasonable reliance on such precedent. See People v. Restrepo, 2021 COA 139, ¶¶ 14-15; Folsom, ¶ 19.
3 3 While the People cite the good faith exception in section 16-3-308, C.R.S. 2021, they do not argue that the analysis under that statute should differ from the analysis of whether the officers acted in objectively reasonable reliance within the meaning of Davis v. United States, 564 U.S. 229 (2011), and its progeny. Thus, we do not separately discuss the statute. 
16 ¶ 33 Given all this, we conclude that the trial court erred by denying the motion to suppress the items found as a result of the dog search. The People do not maintain that this error was harmless beyond a reasonable doubt. See Bartley v. People, 817 P.2d 1029, 1034 (Colo. 1991). Nor can we conclude that it was, given that those items were the linchpin of Snodgrass’s convictions for possession of a controlled substance and drug paraphernalia. We thus reverse those convictions. III. Suppression of the Empty Marijuana Container ¶ 34 Snodgrass also argues that the trial court erred by denying his motion to suppress the empty marijuana container found by Officer Daly during her “cursory search of the driver’s compartment.” This search occurred before the dog sniff. ¶ 35 We need not resolve this issue, for three reasons: (1) the empty container was not itself the subject of any conviction; (2) even if it is considered when analyzing whether probable cause supported the dog search, probable cause was lacking; and (3) even if it is considered when analyzing whether sufficient evidence supported the conviction for possessing an open marijuana container, the 
17 evidence was not enough, as we will explain next. So resolving this issue would have no bearing on this or future proceedings. IV. Illegal Use, Consumption, or Possession of Marijuana in a Motor Vehicle ¶ 36 Finally, Snodgrass contends that (1) the trial court erred by failing to instruct the jury on the definition of “open marijuana container” and (2) the evidence was insufficient to sustain the conviction related to that container. Because we agree with the second contention, we need not address the first. A. Applicable Law ¶ 37 We review de novo sufficiency of the evidence claims. McCoy v. People, 2019 CO 44, ¶ 27. In determining whether there is sufficient evidence to sustain a defendant’s conviction, we consider whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the verdict, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010). We give the prosecution the benefit of all reasonable inferences that might 
18 fairly be drawn from the evidence. People v. Perez, 2016 CO 12, ¶ 25. ¶ 38 A person commits the offense at issue if the person, while in the passenger area of a motor vehicle on a public highway or the right-of-way of a public highway, knowingly (1) uses or consumes marijuana or (2) has in his or her possession an open marijuana container. § 42-4-1305.5(2)(a). As noted, an “open marijuana container” means a receptable or marijuana accessory that contains marijuana and that is “open or has a broken seal,” the “contents of which are partially removed,” and “[t]here is evidence that marijuana has been consumed within the motor vehicle.” § 42-4-
1305.5(1)(c). B. Application ¶ 39 The parties debate whether the evidence showed that marijuana had been consumed within Snodgrass’s car. The People rely on the following evidence to prove such consumption: (1) Snodgrass was the sole occupant; (2) he was slumped over the steering wheel when the officer first approached; (3) his demeanor and his responses to the officer’s questions were unusual; (4) the officer found marijuana in Snodgrass’s pocket; (5) the marijuana 
19 was stored in a baggie that “provided relatively easy access”; and (6) the police found an empty marijuana container, methamphetamine, a pipe, and alcohol in the car. ¶ 40 We disagree with the People that this evidence permitted a finding beyond a reasonable doubt that Snodgrass had “consumed at least some of the marijuana from the Ziploc bag within his vehicle.” This evidence did not reveal more than speculation about possible marijuana use, as opposed to possession. Cf. People v. Sprouse, 983 P.2d 771, 778 (Colo. 1999) (“[V]erdicts in criminal cases may not be based on guessing, speculation, or conjecture.”). This is especially true given the officer’s testimony that he did not observe “any signs of impairment” in Snodgrass. For instance, the officer did not observe watery eyes or diluted pupils. Nor did the officer report any odor of marijuana. ¶ 41 Consequently, to hold that the above evidence was sufficient to convict Snodgrass of possessing an open marijuana container would be to effectively subtract from the statute the requirement that the evidence show actual marijuana consumption in the car. But we may “not add words to the statute or subtract words from it.” People v. Diaz, 2015 CO 28, ¶ 12 (citation omitted). 
20 ¶ 42 Accordingly, we vacate Snodgrass’s conviction for this charge. V. Conclusion ¶ 43 As to the convictions for possession of a controlled substance and possession of drug paraphernalia, the judgment is reversed. As to the conviction for illegal use, consumption, or possession of marijuana in a motor vehicle, the judgment is vacated. JUDGE PAWAR concurs. JUDGE GROVE concurs in part and dissents in part. 
21 JUDGE GROVE concurring in part and dissenting in part. ¶ 44 I agree with the majority’s conclusion that the evidence was insufficient to sustain Snodgrass’s conviction for illegal use, consumption, or possession of marijuana in a motor vehicle. But I respectfully disagree with the majority’s application of the good faith exception to the exclusionary rule and its conclusion that the results of the dog sniff by Officer Daly’s K-9 must be suppressed. At the same time, however, for reasons that I explain further below, I have grave doubts about the constitutionality of the subsequent hand search of Snodgrass’s vehicle. ¶ 45 Nevertheless, because Snodgrass challenges only the constitutionality of the dog sniff — arguing that the subsequent hand search should have been suppressed as fruit of the poisonous tree — and does not otherwise argue that the officers lacked probable cause for the hand search, I would reluctantly affirm the trial court’s denial of the suppression motion. See Compos v. People, 2021 CO 19, ¶ 35 (emphasizing that the party presentation principle applies in both civil and criminal cases (citing Greenlaw v. United States, 554 U.S. 237, 243-44 (2008))). 
22 I. The Dog Sniff ¶ 46 I agree with the majority that, because Daly’s K-9 was trained to alert to legal amounts of marijuana as well as other illegal substances, the dog sniff was a valid search under the Colorado Constitution only if it was supported by probable cause. See People v. McKnight, 2019 CO 36 (McKnight II). I also agree with the majority’s conclusion that, under the totality of the circumstances, the officers did not have probable cause to conduct the dog-sniff search at the time that Daly deployed the K-9. ¶ 47 But I part ways with the majority (and with People v. Restrepo, 2021 COA 139, which addressed substantially the same issue) when it comes to the question whether the officers’ actions were consistent with existing case law, thus triggering the good faith exception to the exclusionary rule. I would apply the good faith exception here because, notwithstanding the voters’ adoption of Amendment 64 in 2012, Daly conducted the dog sniff “in objectively reasonable reliance on binding appellate precedent.” Davis v. United States, 564 U.S. 229, 249-50 (2011). Indeed, on the date of Snodgrass’s encounter with the police, our supreme court had declared it “settled” — in an opinion issued after the passage of 
23 Amendment 64 — that “walking a trained narcotics detection dog around a car that has not been unlawfully stopped or detained does not implicate the protections of either the Fourth Amendment or Article II, section 7 of the state constitution.” People v. Mason, 2013 CO 32, ¶ 10. Whether or not this statement was dicta is beside the point. Mason, like the cases that it relied on, expressly approved of the precise actions that Daly performed — using a trained narcotics-detection dog to sniff a car that had not been unlawfully stopped or detained without regard to probable cause. Id.; see also Illinois v. Caballes, 543 U.S. 405, 409 (2005); People v. Esparza, 2012 CO 22, ¶ 2. ¶ 48 To be sure, Amendment 64 fundamentally altered the playing field when it comes to the use of dog sniffs that do not differentiate between legal and illegal substances. But until the release of the splintered opinion in People v. McKnight, 2017 COA 93 (McKnight I), no Colorado case had held that a dog sniff constituted a search, much less a search that must be predicated on probable cause. As the majority correctly notes, relying on pre-McKnight I case law at the suppression hearing, “the [trial] court concluded that 
24 reasonable suspicion was not required because the dog sniff was not a search under the state constitution.” Maj. op. at ¶ 8. ¶ 49 Nor, at the time, was there case law deciding whether an alert from a dog trained to detect marijuana and other substances, standing on its own, could establish probable cause for a hand search. In fact, in two post-Mason (and post-Amendment 64) cases, the supreme court acknowledged but expressly reserved that question for another day. See People v. Cox, 2017 CO 8, ¶ 22 n.5; People v. Zuniga, 2016 CO 52, ¶ 30 n.6. ¶ 50 I do not think it realistic to hold police officers to the same standards as appellate judges and justices — who, in McKnight I and II generated no fewer than six different opinions — when it comes to predicting the effect of Amendment 64 on the permissibility of dog-sniff searches. Simply put, existing case law at the time of Snodgrass’s encounter with the police made clear that a dog sniff was not a search. And while Amendment 64’s effective redefinition of “contraband” in the context of marijuana pulled the rug out from under that precedent, I do not believe that it was obvious at the time of the search here — or, even had it been obvious from a jurisprudential standpoint, that it would be 
25 reasonable to expect the officers to ignore Mason. I therefore respectfully disagree with the majority’s conclusion that the good faith exception did not apply. II. The Hand Search ¶ 51 Application of the good faith exception, however, does not necessarily end the inquiry because the K-9’s alert in this case led to another search — during which Daly discovered the methamphetamine. The majority concludes that the results of the hand search should be suppressed because they were the fruit of the unconstitutional dog sniff. But if, as I believe, the dog sniff was done in good faith reliance on existing appellate precedent, then the fruit of the poisonous tree doctrine would not apply. See People v. Hagos, 250 P.3d 596, 619 (Colo. App. 2009). ¶ 52 But that raises the question whether, if the police did not have probable cause to conduct the dog sniff in the first place, the K-9’s alert provided Daly with enough additional information to supply probable cause for the hand search. I would likely answer that question in the negative because, as was the case in McKnight I and II, the dog’s alert gave the officer no way of determining whether the car contained lawful or unlawful substances. In other words, Daly 
26 had no more actionable information after the dog sniff than she did before it. And because I agree with the majority that probable cause did not exist before the dog sniff, I see no reason to believe that it would exist afterward, either. ¶ 53 Normally, that would be enough to reverse the suppression ruling. But as I noted above, our supreme court has made clear that we are bound by the party presentation principle. See Compos, ¶ 35. The People’s answer brief points out in a footnote that Snodgrass “does not separately challenge on appeal probable cause for the search of the vehicle’s interior that occurred after the dog sniff.” I agree with that reading and note that Snodgrass did not contest that characterization of his argument in the reply brief. Thus, although I believe that Daly’s hand search of the vehicle was on highly questionable constitutional footing, I would reluctantly affirm the trial court’s denial of Snodgrass’s suppression motion.