The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 30, 2022

**2022COA70**

**No. 19CA1727, *People v. Lopez* — Constitutional Law —**

**Colorado Constitution — Searches and Seizures — Exclusionary**

**Rule — Good Faith Exception; Drug-Detection Dogs**

In light of Amendment 64 and *People v. McKnight*, 2019 CO

36, a division of the court of appeals considers whether, when

evidence is obtained through a search later determined to be a

violation of a defendant's rights under article II, section 7 of the

Colorado Constitution, the police acted in reasonable reliance on

certain precedent, and consequently, whether the good faith

exception to the exclusionary rule should apply.

In *People v. Esparza*, 2012 CO 22, and *People v. Mason*, 2013

CO 32, the supreme court held that a dog sniff of the exterior of a

car is not, under the state constitution, a "search" requiring a

justification of any sort. In *McKnight,* however, the supreme court held that the 2012 passage of Amendment 64 decriminalizing, in certain circumstances, the possession of marijuana created a state constitutional "privacy interest" in vehicles, rendering dog sniffs "searches."

The police conducted their dog sniff of the car here after the passage of Amendment 64 but before *McKnight* was announced. In *People v. Restrepo,* 2021 COA 139, a division of this court held that, in these circumstances the police could no longer, in light of the passage of Amendment 64, consider *Esparza* and *Mason* binding authority upon which they could rely in good faith.

In this case, the division supplements *Restrepo*'s reasoning with consideration of the supreme court's decision in *People v. Zuniga,* 2016 CO 52, concluding that *Zuniga* effectively put the police and public on notice that the *Esparza* and *Mason* decisions could no longer be relied on as settled law.

The division concludes that, lacking a showing of probable cause by the People on appeal, the evidence discovered in the car should be suppressed. *See McKnight,* ¶ 61.

COLORADO COURT OF APPEALS                                  **2022COA70**

Court of Appeals No. 19CA1727
El Paso County District Court No. 16CR4333
Honorable Gregory R. Werner, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jason Robert Lopez,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Berger and Tow, JJ., concur

Announced June 30, 2022

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kimberly Penix, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jason Robert Lopez, appeals the judgment of conviction entered on jury verdicts finding him guilty of six counts of possessing a controlled substance and as a special offender on four of those counts for possessing a weapon during a drug crime. We reverse and remand for a new trial.

## I.    Background

¶ 2    On August 17, 2016, Detective Kristopher Fish pulled Lopez over in Colorado Springs for driving a vehicle without a valid registration and failing to signal while turning. At the time, a passenger — Naudia Delozier — was also in the car.

¶ 3    Noticing, among other things, how nervous Lopez was, Detective Fish summoned a K-9 unit to conduct a dog sniff of the exterior of the vehicle. After the dog alerted to the presence of narcotics, the police searched the interior of the vehicle, finding illegal narcotics,[1] a loaded semiautomatic handgun, and a bag of tools.

---

[1] The drugs were methamphetamine, heroin, psilocyn, diazepam, alprazolam, and morphine.

¶ 4     The police arrested Lopez but not Delozier.  At trial, Lopez's defense was that the drugs were Delozier's.

¶ 5     The jury subsequently found Lopez guilty of all counts, and, after adjudicating him an habitual offender based on seven prior felony convictions, the trial court sentenced him to a term of sixty-four years' imprisonment in the custody of the Department of Corrections.

¶ 6     Lopez now appeals, contending that the trial court erred by (1) denying his motion to suppress evidence recovered in the search of the car; (2) excluding Delozier's hearsay statements exculpating him; and (3) allowing prosecutorial misconduct during closing argument.

¶ 7     Because we agree with Lopez's first contention, we see no need to address the other two.

## II.     *Suppression of Evidence*

¶ 8     Lopez contends that the trial court erred by not excluding evidence obtained as the result of an illegal, exploratory dog sniff of the vehicle's exterior.  The dog sniff was illegal, he says, because, as the trial court found, it was not supported by probable cause.  We agree and conclude that reversal is required.

### A.     Facts

Before the execution of the dog sniff of the car,

- Detective Fish saw Lopez having difficulty opening his window and, after getting out of the vehicle, appearing nervous (breathing rapidly and reaching into his pockets);

- Lopez told Detective Fish that he had recently been released from prison and was out on bond in a pending narcotics case; and,

- Lopez also told Detective Fish that, although he lived in Aurora, he was in Colorado Springs doing construction work (a claim the detective found suspicious because Lopez was dressed in clean clothes, an ironed shirt, and "designer shoes").

### B.     Dog Sniff "Searches"

Article II, section 7 of the Colorado Constitution and the Fourth Amendment to the United States Constitution protect against unreasonable searches and seizures. *People v. Johnson,* 2021 CO 35, ¶ 19.

¶ 11    In *People v. Mason*, 2013 CO 32, ¶ 10, the supreme court said it was "settled that walking a trained narcotics detection dog around a car that has not been unlawfully stopped or detained does not implicate the protections of either the Fourth Amendment or Article II, section 7 of the state constitution." (citing *Illinois v. Caballes,* 543 U.S. 405, 409 (2005)); *accord People v. Esparza*, 2012 CO 22, ¶ 2.  The court reasoned that because a dog sniff for drugs could only reveal the presence of illegal (or contraband) substances in which there could be no legitimate expectation of privacy, the sniff would not constitute a "search" under those constitutional provisions.  *See Caballes*, 543 U.S. at 409; *Mason,* ¶ 10; *Esparza,* ¶ 11.

¶ 12    In 2012, Coloradans passed Amendment 64 to the Colorado Constitution.  *See* Colo. Const. art. XVIII, § 16.  Amendment 64 provides that it is "not unlawful and shall not be an offense under Colorado law" for a person who is at least twenty-one years of age to

possess one ounce or less of marijuana.  Colo. Const. art. XVIII, § 16(3).[2]

¶ 13    In *People v. McKnight*, 2017 COA 93 (*McKnight I*), *aff'd*, 2019 CO 36, a division of this court held that, because Amendment 64 "legalized possession for personal use of one ounce or less of marijuana by persons twenty-one years of age or older . . . , it is no longer accurate to say . . . that an alert by a dog which can detect marijuana (but not specific amounts) can reveal only the presence of 'contraband.'" *Id.* at ¶ 17.  Consequently, because "[a] dog sniff could result in an alert with respect to something for which, under Colorado law, a person has a legitimate expectation of privacy," it is a "search" under the Colorado Constitution.  *Id.* at ¶¶ 17, 18.  This type of "search," the division held, has to be justified by a reasonable suspicion that evidence of illegal activity will be found in the car.  *Id.* at ¶ 20.

---

[2] The supreme court's *Esparza* decision was announced before the 2012 passage of Amendment 64.  And, while its *Mason* decision was announced months after Amendment 64 took effect, the court did not address the amendment's impact in *Mason*.

¶ 14    On certiorari review, the supreme court upheld the division's determination that, in light of Amendment 64's adoption, a dog sniff is a "search" under the Colorado Constitution. *People v. McKnight*, 2019 CO 36, ¶ 48 (*McKnight II*). But, the supreme court said, this type of search has to be justified by a showing of probable cause, and not just reasonable suspicion. *Id.* at ¶¶ 49-50; *see People v. Cox*, 2017 CO 8, ¶ 26 ("[P]robable cause is more demanding than . . . reasonable suspicion . . . .").

¶ 15    *McKnight I* was decided on July 13, 2017, nearly eleven months after Detective Fish summoned the K-9 unit to conduct the dog sniff.

¶ 16    *McKnight II* was decided on May 20, 2019.

### C.    *The Trial Court's Suppression Ruling*

¶ 17    The trial court conducted the suppression hearing in this case on March 7, 2019, nearly two years after *McKnight I* but nearly two and a half months before *McKnight II*.

¶ 18    At the suppression hearing, Lopez primarily argued that the detective's deployment of a marijuana-detecting dog violated the Colorado Constitution as interpreted in *McKnight I* because the

police did not have a reasonable suspicion of criminal activity before deploying the dog to sniff the car.

¶ 19  But Lopez's attorney also argued that "having somebody nervous who is on bond [and] just been released from prison does not give any probable cause for a police officer to react." And counsel agreed that the court was correct in summarizing his position as, "So you are saying . . . lack of reasonable suspicion to stop to begin with, lack of cause to detain slash pat-down defendant, *lack of probable cause or reasonable grounds to conduct the dog sniffs*, or reasonable suspicion." (Emphasis added.)[3]

¶ 20  The trial court denied Lopez's motion to suppress, finding that the dog sniff was proper because it was supported by circumstances

---

[3] Though presenting a close question, this, in our view, was sufficient to preserve Lopez's appellate argument that the dog sniff had to be supported by probable cause. *See Rael v. People*, 2017 CO 67, ¶ 17 (holding that to preserve an argument for appeal, a party must draw the district court's attention to the asserted error, thus allowing the court "a meaningful chance to prevent or correct the error" and creating a record for appellate review (quoting *Martinez v. People*, 2015 CO 16, ¶ 14)); *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004) (no "talismanic language" is required to properly preserve an issue for review on appeal).

known to the police constituting reasonable suspicion,[4] though not probable cause.

## D. Analysis

¶ 21    On appeal, Lopez relies on the trial court's finding that the police did not have probable cause to conduct a search before deploying the dog. He contends that (1) the trial court's determination that the police lacked probable cause to search at that point means the search was illegal under *McKnight II*; and (2) because his case was pending on appeal when *McKnight II* was announced, he is entitled to its retroactive application.

¶ 22    Lopez is entitled to the retroactive application of *McKnight II*. *See People v. Versteeg*, 165 P.3d 760, 766 (Colo. App. 2006). But that does not necessarily mean that he is entitled to relief on appeal.

¶ 23    When the police conduct a search or seizure in violation of the constitution, the exclusionary rule may require suppression of the

---

[4] The trial court made this finding, despite having determined that it was not bound by *McKnight I* because it was an unpublished opinion. The trial court was mistaken; the opinion was published and thus precedential. *See* C.A.R. 35(e).

fruits of that search or seizure.  *People v. Tomaske*, 2019 CO 35, ¶ 10.  But "the exclusionary rule should not automatically apply every time a [constitutional] violation is found."  *Casillas v. People*, 2018 CO 78M, ¶ 21 (quoting *People v. Gutierrez*, 222 P.3d 925, 941 (Colo. 2009)) (discussing federal, Fourth Amendment exclusionary rule).

¶ 24    "Because 'the exclusionary rule is intended to deter improper police conduct[,]' it 'should not be applied in cases where the deterrence purpose is not served, or where the benefits associated with the rule are minimal in comparison to the costs associated with the exclusion of probative evidence.'"  *Id.* (quoting *People v. Altman*, 960 P.2d 1164, 1168 (Colo. 1998)).

¶ 25    "[W]hen the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the 'deterrence rationale loses much of its force,' and exclusion cannot 'pay its way.'"  *Davis v. United States*, 564 U.S. 229, 238 (2011) (citations omitted).[5]

---

[5] Lopez asserts that we shouldn't address the good faith exception issue, since it wasn't raised in the trial court.  But neither was Lopez's reliance on our supreme court's decision in *People v.*

9

¶ 26    Thus, the exclusionary rule should not be applied "when the police conduct a search in objectively reasonable reliance on binding appellate precedent." *Id.* at 249-50; *see People v. Barry,* 2015 COA 4, ¶ 34 (same). "[F]or precedent to be binding under the good faith reliance exception, the precedent must 'address or validate the police conduct at issue' in the case where it is sought to be applied." *People v. Restrepo,* 2021 COA 139, ¶ 14 (quoting *People v. Folsom,* 2017 COA 146M, ¶ 19).

¶ 27    Distinguishable from a situation involving "binding" precedent is "when the law governing the constitutionality of a particular search is unsettled." *See United States v. Berrios,* 990 F.3d 528, 532 (7th Cir. 2021) (quoting *Davis,* 564 U.S. at 250 (Sotomayor, J., concurring in the judgment)). In that situation, the good faith exception to the exclusionary rule is inapplicable because a police officer is just "guessing at what the law might be, rather than

---

*McKnight,* 2019 CO 36 (*McKnight II*). The reason, in each instance, was the same: *McKnight II* hadn't been decided yet. Consequently, the People didn't have anything to defend against, or Lopez to rely on, with respect to the necessity of a probable cause showing.

relying on what a binding legal authority tells him it is." *United States v. Lee*, 862 F. Supp. 2d 560, 569 (E.D. Ky. 2012).

¶ 28    Whether a police officer's actions were in objectively reasonable reliance on appellate court precedent is a legal question we review de novo. *Barry*, ¶ 20.

¶ 29    At the time of the police conduct at issue here, no Colorado appellate decision had held that a dog sniff of the exterior of a car was a "search." Indeed, *Esparza* and *Mason* had held just the opposite. In *Restrepo*, ¶¶ 17-21, however, a division of this court rejected the People's reliance on that authority, because it could no longer be considered "binding" in the aftermath of Amendment 64's passage in 2012.

¶ 30    We reach the same conclusion the division in *Restrepo* did, but for a somewhat different — or additional — reason. When the police deployed the dog in this case, they would not have had to foresee, anticipate, or predict, wholly unaided, the effect of Amendment 64 on the permissibility of dog sniff searches. Existing case law at the time of Lopez's encounter with the police would have put the police on notice that Amendment 64 had changed the legal

landscape and undercut the rationale underlying *Mason* and *Esparza.*

¶ 31 On June 27, 2016 — nearly two months before the dog sniff in this case — the supreme court expressly declared that "[s]ince passage of 'Amendment 64' to the Colorado Constitution in 2012, marijuana use, possession, and growth are lawful under Colorado law in certain circumstances." *People v. Zuniga,* 2016 CO 52, ¶ 18.[6]

¶ 32 Accordingly, as indicated in *Zuniga,* Amendment 64 eliminated the premise of *Esparza*'s and *Mason*'s conclusions that a sniff by a marijuana-detecting dog is not a search under the state constitution. *See id.* at ¶ 49 n.3 (Hood, J., dissenting) (noting that (1) "the assumption that narcotics detection dogs only detect contraband has been critical in past cases holding that dog sniffs

---

[6] In *Zuniga,* the supreme court addressed the question whether, in light of Amendment 64, the odor of marijuana was still suggestive of criminal activity and thus relevant to a probable cause determination. The court held that it was because "Colorado law makes certain marijuana-related activities lawful and others unlawful." *People v. Zuniga,* 2016 CO 52, ¶¶ 18, 23; *see also id.* at ¶ 29 (The dog's "alert could have stemmed from the two men's possession of a legal amount of marijuana, but it also could have stemmed from the possession of an illegal amount of marijuana or any amount of cocaine, methamphetamine, or heroin.").

are not searches under the Fourth Amendment"; (2) "[o]ur cases addressing sniffs as searches rest on similar assumptions that dogs are in effect reliable contraband-detection machines"; but (3) "the issue of whether this sniff was a search is not before us"); *see also McKnight II*, ¶ 36 (explaining that the supreme court in *Zuniga* acknowledged that, "with the legalization of small amounts of marijuana, a dog's alert doesn't provide a yes-or-no answer to the question of whether illegal narcotics are present in a vehicle").

¶ 33   Although "the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers," *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985), we nonetheless "presume a 'well trained' law enforcement officer has 'a reasonable knowledge of what the law [requires],'" *State v. Posa*, 500 P.3d 1212, 1218-19 (Kan. Ct. App. 2021) (quoting *United States v. Leon*, 468 U.S. 897, 919 n.20 (1984)); *see Leon*, 468 U.S. at 919 n.20 ("The objective standard . . . requires officers to have a reasonable knowledge of what the law prohibits."); *Frank v. State*, 912 So. 2d 329, 331 (Fla. Dist. Ct. App. 2005) ("The 'good faith' exception is based on an objective standard and expects

13

officers to know the law."). To that same end, "law enforcement has a duty to stay abreast of changes in the law." *State v. Liebl*, 886 N.W.2d 512, 521 (Minn. Ct. App. 2016).

¶ 34 In *Zuniga,* the supreme court explicitly put the public and police on notice that, in light of Amendment 64's passage, the basis for its decisions in *Esparza* and *Mason* (i.e., that a dog's alert exposes *only* contraband) no longer existed, and that, consequently, the law was, at best, unsettled.

¶ 35 Indeed, because the premise of *Esparza* and *Mason* no longer existed after Amendment 64 became effective, the supreme court in *McKnight II* had no need to, and did not, overrule *Esparza* or *Mason* as wrongly decided. *Cf. Davis*, 564 U.S. at 232 (concluding that the good faith exception to the exclusionary rule may apply "when the police conduct a search in compliance with binding precedent that is later overruled"). Rather, *McKnight II* recognized that those cases were simply not applicable in light of Amendment 64. *See McKnight II*, ¶ 43.

¶ 36 In other words, the *Esparza* and *Mason* decisions did not address the question presented here: "whether the sniff of a dog trained to detect marijuana in addition to other substances is a

14

search under a state constitution in a state that has legalized marijuana." *McKnight II*, ¶ 47.  Because, at the time of the police action here, no binding precedent had approved the police conduct at issue here, we cannot say that the police acted in objectively reasonable reliance on such precedent.  *See Restrepo*, ¶¶ 14-15; *Folsom*, ¶ 19.

¶ 37    Consequently, we conclude that the good faith exception does not apply to the fruits of the dog sniff and subsequent search.

¶ 38    *McKnight II* requires that a dog sniff be supported by probable cause, which the trial court said was lacking.  On appeal, the People point to the circumstances that the court found satisfied the reasonable suspicion standard — Lopez's nervousness, his driving an unregistered vehicle while on bond for a new narcotics case after having just been released from prison, and his claiming to be in Colorado Springs to do construction work despite being nicely dressed and accompanied by a female passenger.

¶ 39    But the People do not argue that these circumstances satisfied the probable cause standard.  The most they argue is that "the trial court found this supported reasonable suspicion rather than probable cause.  But there is room to disagree."

15

¶ 40    This tepid presentation does not an argument make, and it is not our job to "make or develop a party's argument when that party has not endeavored to do so itself." *Beall Transp. Equip. Co. v. S. Pac. Transp.*, 64 P.3d 1193, 1196 n.2 (Or. Ct. App. 2003).

¶ 41    Because the People have failed to convince us that probable cause supported the dog sniff, as required by *McKnight II*, we conclude that the trial court erred in not suppressing the evidence found after the dog sniff.

¶ 42    If, as here, "an asserted error is of constitutional dimension, reversal is required unless the court is convinced that the error was harmless beyond a reasonable doubt." *Bartley v. People*, 817 P.2d 1029, 1034 (Colo. 1991); *see McKnight II*, ¶ 60. Because the evidence illegally discovered in the vehicle was critical to the prosecution, we have no trouble concluding that the court's error in admitting it prejudiced Lopez, requiring a reversal of his convictions.

### III.    Disposition

¶ 43    The judgment of conviction is reversed, and the matter is remanded for a new trial.

JUDGE BERGER and JUDGE TOW concur.

16